NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220580-U

NO. 4-22-0580

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 10, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Boone County |
| ZACHARY J. ENK, | ) | No. 20CF221 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ronald A. Barch, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The circuit court did not plainly err by considering victim impact statements that
included recommendations defendant receive the maximum sentence, and counsel
did not render ineffective assistance by failing to object to the statements. The
record does not show the statements influenced the sentencing determination so as
to deny defendant due process.

¶ 2     In January 2022, defendant, Zachary J. Enk, pleaded guilty to attempt (first degree

murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2020)) in connection with his attack on the victim,

Bradley Larsen. The circuit court sentenced defendant to 21 years' incarceration. Defendant

appeals, arguing he was denied due process and it was plain error for the circuit court to consider

recommendations in two victim impact statements for a maximum 30-year sentence. In the

alternative, he argues his counsel rendered ineffective assistance for failing to object and

preserve the matter for review. We determine the record does not sufficiently support

defendant's argument the recommendations in the victim impact statements rendered the

sentencing hearing fundamentally unfair so as to deprive him of due process. Accordingly, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4            In October 2020, the State charged defendant with one count of attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a)(2) West 2020)) and one count of aggravated battery (720 ILCS 5/12-3.05(f)(1) (West 2020)). On January 5, 2022, defendant entered an open guilty plea to the attempt charge. The factual basis for the plea included that, on October 6, 2020, law enforcement responded to a report of a stabbing. Larsen stated defendant, who was his neighbor, came into his garage and stabbed him with a knife, causing two wounds to Larsen's back and one to his neck. Larsen chased defendant, who ran to his vehicle and fled the scene. While police were speaking with defendant's mother, defendant returned and was taken into custody. During an interview with sheriff's detective Tim Fleming, defendant admitted he went to Larsen's house with the intent to kill Larsen, Larsen's wife, and their son so he could have sex with their two daughters, ages 10 and 1 1/2.

¶ 5            The presentence investigation report (PSI) showed defendant, who was 25 years of age at the time, lived with his mother, brother, and stepfather, and he maintained a relationship with his biological father. Defendant graduated high school in 2013 and had received good grades. He consistently maintained employment after graduating. He had worked for Dr. Pepper for over four years and had been promoted to a supervisory position on the night shift. He used his income to establish credit and open savings accounts, purchase his own vehicle, and pay monthly rent to his mother, who had been on disability following an injury at work. Defendant had no criminal history other than a simple traffic offense in 2015. He did not use drugs and used

alcohol only on special occasions or while watching football. Defendant had no prior mental health issues but stated he was willing to engage in any therapy that might be appropriate.

¶ 6           Defendant told the investigator he hated himself for what he did and he regretted his actions every day. The PSI listed three protective factors: (1) "[s]table employment prior to incarceration"; (2) "[s]upportive family"; and (3) "[s]table housing." The PSI listed a single risk factor of "[p]ossible impulse control/anger management issues." Attached to the PSI were victim impact statements from Larsen and his sister, Sherri Larsen.

¶ 7           At the sentencing hearing, Fleming testified about the events of October 6, 2020. In addition to the information provided in the factual basis for the plea, Fleming identified photos of Larsen's physical injuries. Those photos indicate the injuries were minor. Fleming testified he recovered a knife at the crime scene. In defendant's vehicle, Fleming recovered a leather sheath for the knife found at the scene, a folding knife, and a handwritten note. The note stated, "I love little girls" and "I want to f*** little girls." A summary of Fleming's interview with defendant shows defendant told Fleming he had been attracted to Larsen's oldest daughter ever since she was born. He described his urges involving young girls and stated he usually ignored them, but they had been getting stronger. He also described taking a video using his cell phone of another neighbor's young daughter when she played in her backyard in her underwear. However, he had not previously touched any girls. On the day of the offense, he could not resist the urge anymore. The note found in his vehicle was meant to be a suicide note.

¶ 8           The State presented a psychological assessment of defendant obtained by the defense during plea negotiations. In it, defendant described "immersing into pornographic fantasy videos" involving males controlling young female preadolescents, ages 10 to 11. He also described having similar sexually explicit dreams, including dreams involving Larsen's oldest

daughter. Regarding the offense, defendant said he was in a bad mood, "just snapped," and he "couldn't keep it caged up anymore." He confirmed his plan was to kill Larsen, his wife, and their son. He planned to control and have sex with Larsen's oldest daughter and perhaps his youngest daughter. He intended to leave their daughters alive and then commit suicide. The examiner reached diagnostic impressions that included pedophiliac disorder, sexual sadism disorder, and avoidant personality disorder. The primary diagnosis included emotional-externalizing disorders and anhedonia-related disorders.

¶ 9        The State directed the circuit court's attention to the victim impact statements attached to the PSI, stating Larsen asked for the court to read his privately and Sherri asked that hers be read in court. In his written statement, Larsen stated defendant was a monster who wanted to have sex with little girls and had proven he would take extreme actions to make that happen. Larsen wrote defendant was a danger to his family and other families. He described the emotional pain defendant caused his family and how his family sold their home and spent money on security. Larsen then wrote, in part:

> "Unfortunately[,] the law will not allow you to give [defendant] the punishment I feel he deserves. However[,] it does allow for a 30 year sentence, and that's what I am asking you to hand down. Give him the maximum sentence for trying to kill me, and my family. There is no place for him and in this society, and I truly believe if he is not locked up[,] he will rape someone's children."

¶ 10        Sherri's statement also expressed the emotional harm resulting from defendant's conduct. She stated Larsen and his family were "doing all we can to convince the legal system that [defendant] should still be sentenced [to] the maximum of 30 years." She also stated, "[defendant] is a monster and the punishment needs to reflect the heinousness of his plan, rather

than the outcome." She asked the court to sentence defendant to "the maximum 30-year sentence he is facing and deserves." Defendant did not object to the victim impact statements.

¶ 11    The defense offered four family member statements generally acknowledging the seriousness of the crime but noting defendant's previous work ethic and care for others. Defendant gave a statement in allocution in which he apologized and expressed remorse. Defendant stated there were no excuses for his actions and he accepted full responsibility. He said he had issues with himself he needed to address, and he was sick and disgusted by his attraction to young girls. He stated the Larsens would never see him again and he would never contact them.

¶ 12    In aggravation, the State argued defendant's conduct caused or threatened physical and emotional harm. The State pointed to the impact statements showing the effect of the crime on the Larsens, arguing, "that is probably the most serious factor we should consider in this case."  The State also argued deterrence was a factor. The State recognized various mitigating factors and argued those did not show defendant was unlikely to commit another crime. Additionally, the State emphasized nonstatutory aggravating factors, such as defendant's underlying motive, lack of excuses, and that he was sober at the time of the offense. The State requested a sentence of at least 20 years, and stated,

> "[t]he Larsens, of course, have expressed their desire to see [defendant] sentenced to the maximum term. I certainly understand that is how many, if not most, victims feel, especially given this type of case and the circumstances. I also understand the Court has to weigh everything that you have in front of you."

The State also told the circuit court:

"[o]ne thing that is really important to the Larsens is that their children are all at least 18 years old by the time the defendant is released from prison. Their youngest daughter will turn 18 in April of 2037. If the defendant is sentenced to 20 years at 85 percent, he would have to serve a total of 17 actual years, which should mean he'd be released in October of 2037."

The defense stressed the limited extent of the physical injuries and argued various mitigating factors, such as defendant's lack of a prior criminal history, and requested a sentence of 10 years' incarceration.

¶ 13    Discussing factors in aggravation, the circuit court found defendant set out to cause, and did cause, physical harm. The court also found considerations of deterrence warranted a substantial sentence. The court then stated:

"Your conduct, sir, has deprived the Larsen family and others associated with them from what was an idyllic family and living situation in a home that they had for years, in a neighborhood they enjoyed, and is since an area that—a living situation that for them had a sense of security and safety. They will be forever haunted by this event and no other family should have to experience an event like this frankly.

One of the victim impact statements requested a 30-year sentence. I think both of them on behalf of the prosecutor want the maximum sentence possible, and one of the reasons given for that is that this family and the people associated with this family, they believe they will never get over this and the Court understands that they will likely never get over this situation, but the Court does hope that—well, the Court acknowledges they weren't—that these thoughts and

concerns and emotions they're struggling with will never go away, but the Court has known victims of crime. The Court has known personal family members that have been victims of crimes. One family member was a victim of an assault by another individual that ended up going on to murder someone and that happened when that individual was a child. The family has never gotten over it, but the family has, including the victims, moved forward and even the victim, although it's not out of his mind. He has gone on to have a productive life, a successful life with a family, and while it's never gone, he did—he has. His family has moved on and my hope for your family is that you will be able to move on."

¶ 14      The circuit court next discussed mitigating factors. The court found defendant did not have a criminal history, immediately confessed, pleaded guilty, and spared the Larsen family a jury trial. The court acknowledged defendant's repeated apologies and willing participation in evaluations. Ultimately, the court found a minimum sentence would deprecate the seriousness of the offense and sentenced defendant to 21 years' incarceration.

¶ 15      Defendant filed a motion to reconsider, arguing the sentence was excessive. In his motion, defendant did not take issue with the recommendations for a maximum sentence in the victim impact statements. In denying the motion, the circuit court noted there was a difference of opinion about concerns of recidivism and the emotional and physical harm caused by the crime. The court repeated factors in aggravation and mitigation and stated, "I gave considerable thought heading into the sentencing and I listened closely to all the testimony, the individuals on [defendant's] behalf, the individuals on behalf of the victim here including—I believe it was his sister that was a more prominent witness on that side." The court further stated, "I believe it's a difficult case, a very difficult case, and I thought I had assigned and considered all the

appropriate factors so I'm going to—it's a weighty decision, but I believe I—at least a reasoned decision on it."

¶ 16        This appeal followed.

¶ 17                              II. ANALYSIS

¶ 18        Defendant contends the circuit court denied him due process by considering sentencing recommendations in victim impact statements offered under the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/1 *et seq.* (West 2020)). Defendant acknowledges he forfeited the issue by failing to raise it in the circuit court but argues for plain error review. In the alternative, he argues his counsel was ineffective for failing to object and to preserve the issue for appeal.

¶ 19        The question of whether a forfeited claim is reviewable as plain error is a question of law that is reviewed *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485, 939 N.E.2d 475, 480 (2010). A defendant must object at trial and raise the issue in a posttrial motion to preserve an issue for review. *People v. Hestand*, 362 Ill. App. 3d 272, 279, 838 N.E.2d 318, 324 (2005). "We require this of defendants because failure to raise the issue at trial deprives the [circuit] court of an opportunity to correct the error, thereby wasting time and judicial resources." *People v. Jackson*, 2022 IL 127256, ¶ 15, ___ N.E.3d ___. Here, defendant argues the errors amount to plain error and his counsel was ineffective for failing to preserve them. Illinois' plain error rule "is a narrow exception to forfeiture principles." *People v. Moon*, 2022 IL 125959, ¶ 21, ___ N.E.3d ___.

> "The plain-error doctrine allows a court to disregard a defendant's forfeiture and
> consider unpreserved error in two instances: '(1) where a clear or obvious error
> occurred and the evidence is so closely balanced that the error alone threatened to

tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process.' " *People v. Matthews*, 2017 IL App (4th) 150911, ¶ 16, 93 N.E.3d 597 (quoting *People v. Belknap*, 2014 IL 117094, ¶ 48, 23 N.E.3d 325).

¶ 20 Forfeiture may also be set aside when a defendant contends trial counsel was ineffective for not preserving the error. *People v. Collins*, 2021 IL App (1st) 180768, ¶ 32, 201 N.E.3d 25. Such a claim requires counsel to have made an objectively unreasonable decision resulting in prejudice to the defendant. *Collins*, 2021 IL App (1st) 180768, ¶ 32. However, whether we review this case for plain error or for ineffective assistance of counsel, we begin by determining whether an error actually occurred. See *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1059 (2010) ("[The] court typically undertakes plain-error analysis by first determining whether error occurred at all.").

¶ 21 The Illinois Constitution provides that crime victims, as defined by law, have the right to be heard at sentencing. Ill. Const. 1970, art. I, § 8.1(a)(5). The Act gives effect to this right. See 725 ILCS 120/1 *et seq.* (West 2020). The Act defines a "crime victim" to include a person who "suffered direct physical or psychological harm as a result of a violent crime" perpetrated against them. 725 ILCS 120/3(a) (West 2020). Any person who meets this definition "shall be allowed to present an oral or written statement" at the sentencing hearing. 725 ILCS 120/6(a) (West 2020). In cases involving a violent crime, a circuit court may allow persons impacted by the crime who are not victims to present an oral or written statement. 725 ILCS 120/6(a) (West 2020). Under the Act, the court "shall consider any statement presented along

with all other appropriate factors in determining the sentence of the defendant." 725 ILCS 120/6(a) (West 2020).

¶ 22          Our constitution provides, "[n]othing in this Section or any law enacted under this Section shall be construed as creating (1) a basis for vacating a conviction or (2) a ground for any relief requested by the defendant." Ill. Const. 1970, art. I, § 8.1(e). The Act contains a similar provision. See 725 ILCS 120/9 (West 2020). Thus, we cannot find reversible error based on the provisions of the state constitution or the Act. See *People v. Richardson*, 196 Ill. 2d 225, 230, 751 NE.2d 1104, 1107 (2001); *People v. Mimms*, 312 Ill App. 3d 226, 231, 726 N.E.2d 130, 134 (2000).

¶ 23          However, the prohibition on appellate relief does not alleviate the circuit court's responsibility to exercise appropriate discretion at sentencing. *Richardson*, 196 Ill. 2d at 232. "The Act does not require the consideration at sentencing of any and all victim impact evidence without regard for its relevance or materiality." *Richardson*, 196 Ill. 2d at 232. When evidence is introduced that is so unduly prejudicial it renders the trial fundamentally unfair, the due process clause of the fourteenth amendment provides a mechanism for relief. *Richardson*, 196 Ill. 2d at 232.

¶ 24          Relying on *People v. Larson*, 2022 IL App (3d) 190482, 196 N.E.3d 1187, defendant argues the circuit court denied him due process by considering the recommendation of a maximum sentence in the victim impact statements. In *Larson*, 16 victim impact statements were introduced at the defendant's sentencing hearing following the defendant's open guilty plea to driving under the influence causing death. *Larson*, 2022 IL App (3d) 190482, ¶¶ 3, 11. The statements were read aloud in open court, often over the defendant's objection. *Larson*, 2022 IL App (3d) 190482, ¶¶ 11-13. All were from friends and family of the victims, and six requested

the defendant receive the maximum sentence. *Larson*, 2022 IL App (3d) 190482, ¶ 13. On appeal, the *Larson* court reversed the defendant's sentence because the circuit court improperly considered a factor inherent in the offense at sentencing. *Larson*, 2022 IL App (3d) 190482, ¶¶ 31-32. The court, in *dicta*, then addressed arguments that the circuit court also improperly considered victim impact statements because the issue could recur on remand. *Larson*, 2022, 2022 IL App (3d) 190482, ¶ 35.

¶ 25        The *Larson* court observed that, unlike provisions of the Act pertaining to victims of violent crime, which give courts discretion to allow people impacted by the crime who are not victims to make statements, that discretion was eliminated under the portion of the Act pertaining to victims of motor vehicle offenses. *Larson*, 2022 IL App (3d) 190482, ¶¶ 37-39. In motor vehicle cases, the Act limited the number of permissible victim impact statements to those from a victim or a representative of a deceased person and limited the content of the statements to the impact upon the person giving the statement. *Larson*, 2022 IL App (3d) 190482, ¶ 37. The *Larson* court found only five of the statements were from people meeting the definition of a representative and held the circuit court did not have discretion to allow nonrepresentatives to make statements or permit them to make sentencing demands. *Larson*, 2022 IL App (3d) 190482, ¶ 38.

¶ 26        The *Larson* court stated the legislature clearly intended sentencing hearings in such cases "must not devolve into an interminable parade of victim impact statements," and the Act was presumably imposed in recognition that victim impact evidence may become so excessive as to deprive a defendant of a fair sentencing hearing in violation of the defendant's right to due process. *Larson*, 2022 IL App (3d) 190482, ¶ 39. The court further stated the purpose of the Act is to ensure the sentencing judge will be informed of the full impact of the

offense, so it may be factored into the sentencing calculus, but it does not serve as an invitation to "rail against the defendant" or to recommend a certain sentence to the court. *Larson*, 2022 IL App (3d) 190482, ¶ 37. The court suggested "the State would be well served to so advise the authors of such statements prior to the sentencing hearing." *Larson*, 2022 IL App (3d) 190482, ¶ 37. The court also reminded circuit courts of their obligation to comply with the Act. *Larson*, 2022 IL App (3d) 190482, ¶ 40.

¶ 27 We find *Larson* distinguishable. First, *Larson*'s *dicta* dealt with provisions of the Act pertaining to motor vehicle offenses, which limited impact statements more restrictively than the provision pertaining to victims of violent crime. Further, while the court cautioned the State and circuit court concerning application of the Act, it did not discuss constitutional or statutory prohibitions on determinations of reversible error, and it did not hold the actions of either the State or the circuit court actually resulted in a denial of due process.

¶ 28 Moreover, the State here did not provide an "interminable parade of victim impact statements." Instead, the statements complained of by defendant were limited to two requests for the maximum sentence. The State, while noting the Larsens' desire for a lengthy sentence, did not request the maximum sentence, and the record fails to show the circuit court put any significant weight on the requests for a maximum sentence when it imposed the sentence. The court recognized the request for the maximum sentence, but it did so in relation to the overall emotional impact of the crime on the Larsen family—a factor it was authorized to consider. See *People v. Johnson*, 318 Ill. App. 3d 281, 291, 743 N.E.2d 150, 158 (2000) (holding the court may consider that defendant's conduct caused or threatened serious harm and may consider the psychological impact on the victim).

¶ 29   Notably, the circuit court did not state it used the requests for imposition of a maximum sentence as a factor in its determination of the overall sentence. Instead, the context of the court's comments, made immediately before it discussed factors in mitigation, reasonably indicated it wished to convey to the Larsens its hope they would be able to move past the events when the court would not be giving the maximum sentence they requested. Meanwhile, the court discussed other permissible factors at length. For example, the circuit court repeatedly stressed the seriousness of the crime, concerns about recidivism, and the applicability of deterrence. When denying the motion to reconsider, the court again mentioned the victim impact statements, but not in the context of the request to sentence defendant to the maximum term. The court then specifically stated it "assigned and considered all the appropriate factors."

¶ 30   Defendant appears to recognize the lack of specific commentary supporting his position, noting in his brief the circuit court "might" have relied on the sentencing recommendations in the impact statements. Such speculation is insufficient to show the material in the victim impact statements rendered the sentencing hearing fundamentally unfair. "It is well established that where a sentencing hearing is conducted before the circuit court rather than a jury, the court is presumed to consider only competent and relevant evidence in determining sentence." *Richardson*, 196 Ill. 2d at 233 (citing *People v. Ashford*, 168 Ill. 2d 494, 508, 660 N.E.2d 944, 951 (1995)). The record here fails to show the circuit court improperly considered the Larsens' request for a maximum sentence to impose a greater sentence than it would have otherwise. Accordingly, the record does not support a finding of a denial of due process. As a result, with no clear or obvious error demonstrated, there can be no plain error.

¶ 31   Defendant also argues his trial counsel rendered ineffective assistance by failing to object and preserve the issue for appellate review. However, because we have found no error

occurred, trial counsel's failure to object cannot be seen as ineffective assistance. *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47, 22 N.E.3d 1175 (finding the failure of a defendant to show that error occurred defeats an ineffective assistance claim).

¶ 32                                    III. CONCLUSION

¶ 33         The record does not support a conclusion defendant was denied due process based on recommendations for the maximum sentence in the victim impact statements. Accordingly, we affirm the circuit court's judgment.

¶ 34         Affirmed.