NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230659-U

NO. 4-23-0659

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 5, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| STEPHANIE MELGOZA, | ) | No. 22CF195 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Timothy J. Cusak, |
| | ) | Judge Presiding. |

_____

JUSTICE VANCIL delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:    One of defendant's two convictions for aggravated driving under the influence and one of her two convictions for aggravated reckless driving violated the one-act, one-crime doctrine, but the appellate court cannot review whether the trial court considered illegal victim impact statements, and the trial court did not otherwise abuse its discretion or consider improper sentencing factors when it sentenced defendant to 14 years' incarceration.

¶ 2    Defendant, Stephanie Melgoza, pled guilty to two counts of aggravated driving under the influence (DUI) (625 ILCS 5/11-501(d)(1)(F) (West 2022)) and two counts of aggravated reckless driving (*id.* § 11-503(a)(1), (c)). The trial court sentenced defendant to 14 years' incarceration on each of the two aggravated DUI counts and 3 years' incarceration on each of the two aggravated reckless driving counts, with the sentences to run concurrently. Defendant appeals, arguing that her second conviction for aggravated DUI and her second conviction for aggravated reckless driving both violate the one-act, one-crime doctrine and that the court based

her 14-year sentence on improper considerations. She asks us to vacate one of her convictions and sentences for aggravated DUI and one of her convictions for aggravated reckless driving. She further asks us to either reduce her remaining 14-year sentence or remand for a new sentencing hearing.

¶ 3        We vacate defendant's sentences and convictions for one count of aggravated DUI and one count of aggravated reckless driving, but we affirm her sentence on the remaining aggravated DUI conviction.

¶ 4                                    I. BACKGROUND

¶ 5        In April 2022, the State indicted defendant. The indictment alleged that on April 10, 2022, defendant drove a motor vehicle while under the influence of alcohol, causing a crash that resulted in the deaths of Andrea Rosewicz and Paul Prowant. Counts I and II each alleged aggravated DUI. Counts III and IV each alleged aggravated reckless driving. Defendant pled guilty to both counts of aggravated DUI and both counts of aggravated reckless driving.

¶ 6        In providing the factual basis for its charges, the State indicated that East Peoria Police Officer Jeffery Bieber could testify that one evening in April 2022, he was dispatched to a traffic accident. When he arrived at the scene, he saw a red Dodge Dart with front end damage and two pedestrians lying near the road. Those two pedestrians were later pronounced dead. Officer Bieber spoke to defendant, who was the driver of the Dodge, and she told him that she had driven the vehicle at about 40 miles per hour in a 30 mile per hour zone and that she struck someone. Officer Bieber would further testify that he observed defendant was slurring her speech and had red watery eyes and her breath smelled like alcohol. The officer arrested her for DUI. Defendant stipulated to this factual basis. The trial court accepted defendant's guilty plea and entered judgment on the two counts of aggravated DUI and two counts of aggravated reckless driving.

¶ 7        The Tazewell County Adult Probation Department submitted a presentence investigation report (PSI) to the court. The report noted that defendant was 24 years old. Defendant had an associate's degree and completed her Bachelor of Science while the case was pending. Other than two petty driving offenses, defendant had no prior criminal history. She had complied with the terms of her bond, including wearing an alcohol monitor and taking random drug tests. No alcohol or drug consumption was recorded. The report also stated that at the time of sentencing, defendant was pregnant.

¶ 8        At the start of the sentencing hearing, the trial court noted that the sentencing range for aggravated DUI resulting in two deaths was 6 to 28 years in the Illinois Department of Corrections (DOC) and the sentencing range for aggravated reckless driving was 1 to 3 years. The court stated that it had reviewed the PSI, as well as recordings from the night of the crash. Some of those recordings showed defendant laughing and singing after her arrest. The court also noted that it had received 2 letters from relatives of the victims and 18 letters on defendant's behalf. At the hearing, Officer Bieber testified consistent with the State's earlier report.

¶ 9        The trial court then heard testimony from three relatives of Andrea Rosewicz and Paul Prowant, the victims. Andrea Rosewicz's cousin said defendant alone was responsible for taking Andrea from the family. She described "waves of grief" that made her feel physically ill. She said she trusted the trial court judge to make the right sentencing decision, adding, "I respectfully request no leniency."

¶ 10       Rosewicz's sister read a prepared statement from the victim's aunt and uncle. That statement lamented the loss of Andrea's life. The statement said to defendant, "Whatever punishment you are given will never change the outcome of that horrible night or bring back the lives that were lost." Then the victim's sister addressed defendant in her own words. She told

defendant, "There are no words that could even remotely come close to inflicting pain and suffering on you anywhere near as much as you have inflicted on me, our families, and Andrea's friends, the magnitude of which is unimaginable." Addressing the judge, she said, "An eternity in prison is not enough time. Yet, I do implore you to issue the maximum sentence permitted by law to keep this monster from doing any more harm to any other innocent victims."

¶ 11        Finally, a relative of Paul Prowant provided a statement. She said that the deaths of Andrea and Paul continued to haunt their families. She told the judge:

> "We, family, and friends alike ask that the Court please punish [defendant] to the fullest extent of the law and sentence her to the maximum allowed by the Court. She made the choice to drink and drive from one bar to another, it was her decision, and she should be held accountable. *** All we ask of you, [Y]our Honor, is that justice be served and you hold [defendant] accountable for every drunken decision she's ever made especially this last one that ended the beloved lives of Paul Richard Prowant and Andrea Lynn Rosewicz."

¶ 12        After the close of evidence, the State asked the court to impose a sentence of not less than 20 years in the DOC. Defense counsel argued in mitigation that defendant did not intentionally cause any harm, she could not have predicted these deaths, and alcohol had impaired her judgment. Defense counsel commented on how extensive media coverage of the crash and the response from defendant's university community had "vilified" her. She was "despondent," "remorseful, repentant," and "unable to sleep." She had complied with the conditions of her pretrial release, and she had strong support from her family. Defendant was fully insured, so the victims' families had received compensation. Defense counsel offered his personal observations and beliefs that defendant had demonstrated the appropriate character and attitude. Defendant had taken

- 4 -

responsibility and had called 911 at the time of the crash. She cooperated with the pretrial detention conditions and would likely comply with probation terms. Finally, defendant wanted to share her experience with others to discourage them from drinking and driving. Defense counsel further argued that the court should not consider deterrence as an aggravating factor because the media coverage would already act as a deterrent. Defendant then spoke in allocution. She apologized to the victims' families and her own. She said she intends to never drink again, and she wants to warn others about the dangers of drinking and driving.

¶ 13 The trial court began its findings by noting that it had considered the PSI, the letters on defendant's behalf, the victim impact statements, the evidence presented, counsel's argument, the factors in aggravation and mitigation, defendant's history and character, and the seriousness of the offense. The court found the following mitigating factors: defendant called 911 and cooperated with the police; she accepted responsibility and pled guilty; she did not expect her behavior would harm anyone; she compensated the victims' families; she had no notable criminal history; her character and attitude indicated her criminal conduct was unlikely to recur; and she had complied with all the terms imposed by pretrial services. After reviewing all the factors in mitigation, the court declined to sentence defendant to probation, finding it would "deprecate the seriousness of this offense."

¶ 14 The court found that the only aggravating factor was that "the sentence is necessary to deter others from committing the same crime." The court explained as follows:

"[T]hat's the hard one because what does deter others from committing the same crime? It's unknown. The family wants maximum, 28 years. Sure, the victims family or the defendant's family wants probation. And what sentence can be entered

at this point in time that would actually deter anybody else from going out and driving while drunk?

[National Highway Traffic Safety Administration (NHTSA)] came out with a form after a study in 2020 that approximately one person dies every 45 to 50 minutes in the United States because of alcohol-related accidents. What's going to change that? You have to get out. That's what the deterrence is about.

I don't know if anybody recognizes the name of Glen Abney? Joshua Greene? Prosecutor does. Glen Abney was the last person sentenced in here for a fatal accident in killing Joshua Greene. Nobody remembers that. Where's the deterrence? How does my sentence to prison deter anybody if nobody remembers the names? So that's what we got to work on. We got to work on getting this word out, and it's probably got to be to the individuals that make money off this: The alcohol companies, the promoters, the distributors. Why aren't they mandated to every time they put up a poster of how great drinking is, put one up of the victims? Make them do that. Make them pay for that. It worked to some degree with cigarettes. It could work in this. Something else has to be done though. Twelve thousand people losing their lives every year is ridiculous, and I know I have more of these coming into my courtroom here in Pekin.

Our system is based on punishment and rehabilitation. I have to balance those two. What's an appropriate punishment in order to deter other people and what is the rehabilitative quality of the person that's being sentenced? [Defendant], you show great potential as far as rehabilitation based upon your actions prior to this sentencing hearing and your actions since the tragedy that occurred on April

- 6 -

10, 2022, but it's not all about rehabilitation. There is a sentence that is necessary to deter others and that needs to be out there, and I would implore you while you are in custody to use your degree and work toward some event or some practice that could be employed to make sure that, you know, young kids find out the dangers of drinking, teenagers find it out, kids in their 20's. You know, you get them of all ages, but, especially, we can't keep giving this theory out that drinking is great. Here's a celebrity on the beach drinking. Where is the video right after that of somebody that's dead? That's what we need or something like that. I don't know what it is. There is something out there, but this is the easiest fatality in the U.S. to get rid of. If you don't drink and drive, then this isn't going to occur. It's simple. If you've been drinking, don't drive. It can't get much easier than that. And if you do, then you're putting yourself in harm's way. Sadly enough, you put other people in harm's way."

¶ 15 The trial court sentenced defendant to 3 years in the DOC for each aggravated reckless driving conviction and 14 years for each aggravated DUI conviction, with 2 years of mandatory supervised release and with the sentences to run concurrently.

¶ 16 Defendant moved for the court to reconsider its sentence. In defense counsel's motion and at oral argument, he reiterated some of the arguments raised at the sentencing hearing. Defense counsel argued that the conditions where the crash occurred were especially mitigating. The roadway was poorly lit, the road was not marked off with lanes, and there were no sidewalks or shoulders. The victims were also intoxicated and likely not paying close attention. As a further mitigating factor, defendant was pregnant at the time of sentencing, and she had recently married the child's father to facilitate custody. Defense counsel argued that a prison sentence would be

harmful to the child. The motion and oral argument also explained some of defendant's conduct after the offense and the harmful effects the media attention had on defendant, arguing that it had functioned as a kind of deterrent. Finally, defense counsel argued that deterrence is inherent in the statutory penalty, so the court should not rely too heavily on deterrence in aggravation.

¶ 17 The State opposed defendant's motion to reconsider. It agreed that defendant did not intend harm and that she was pregnant. It further agreed that "the shock of the sentence will wear off over time" and "[p]eople do forget things." The State argued that because of the media attention given to the case, defendant's sentence was proper "to deter people all over the world from this kind of action."

¶ 18 The trial court denied defendant's motion to reconsider. The court commented on how difficult the sentencing decision was. Regarding defendant's hostile treatment from social media, the court said, "That had no bearing whatsoever on the sentence that I did impose and it was not a factor in how I reached my decision." The court said that it had considered the road conditions in imposing its sentence and that it viewed defendant's behavior in the immediate aftermath of the crash as "a result of shock, but also intoxication." The court acknowledged that the deaths were accidental but told defendant, "Everybody in Peoria and Tazewell County that night was in jeopardy based upon your actions. That's what you got sentenced for. That's part of what you got sentenced for."

¶ 19 Regarding deterrence, the court told defendant, "That is in large part what you're being sentenced to the [DOC] for. It's to deter the behavior of others, yourself included for whenever you are released from custody." The court said that since defendant's sentence, it had already made another, similar sentencing decision and had "another one coming up." The court stated, "If I give you any lesser sentence, I am deprecating the seriousness of the offense. Two

people had their legs ripped off and had their lives erased from the Earth that night based upon your actions." It added, "The only way this is going to stop, this type of behavior—the only way that I'm not going to have cases like this coming into my courtroom every single week, every single month is for people to figure out that this isn't the way to handle their business."

¶ 20        The court confirmed that it had considered defendant's pregnancy. The court said: "And that is a factor in mitigation. However, the circumstances upon which you got pregnant, the timing upon which you got pregnant wasn't necessarily mitigating to me. That just showed me that while you knew you were likely going to prison, you chose to get pregnant instead, which suggested to me a complete indifference to your child, to yourself, to the child's father. ***

*** These things were done—that was done intentionally. Maybe it was done unintentionally, much like the—the aggravated drinking and driving. But that was done at a time when you knew that you were going to be going to prison. It was a bad idea. It was a—that was—if you want to term it in a way that you have before—a mistake. That was not smart. That was not using your—your good senses. You're a college graduate. You knew better. You should've known better. I didn't—I didn't take that into consideration as far as—as punishing you, but I was aware of it when you pled guilty.

And again, for the most part, that wasn't brought up at sentencing hearing so that the victim's family didn't find out and weren't having to sit there while they're listening to someone talk about how they killed their loved ones and didn't have to realize that you're continuing to march on in your life, same way as before. You got drunk, you killed a couple people, but hey, you got pregnant. You're going

to have a baby. You got married. It just showed some indifference. It's—it's a lack of character. It's a lack of understanding what's going on."

The court concluded that its sentence was appropriate, even though a "lot of people wanted it to be worse," and it denied defendant's motion to reconsider.

¶ 21 This appeal followed. After the parties filed their briefs, defendant moved for leave to file a supplemental brief, arguing her second conviction and sentence for aggravated reckless driving violated the one-act, one-crime doctrine. The State did not object, and we granted defendant's motion.

¶ 22                                    II. ANALYSIS

¶ 23 On appeal, defendant argues that the trial court violated her right to due process of law at her sentencing by (1) finding that a prison sentence would not deter others from driving drunk but still relying on deterrence as an aggravating factor, (2) conducting independent research and relying on private knowledge outside the record, (3) considering her pregnancy as an aggravating factor, and (4) allowing improper victim impact statements. She asks us to reduce her 14-year sentence or to remand for a new sentencing hearing. Defendant also argues her second conviction and sentence for aggravated DUI and her second conviction and sentence for aggravated reckless driving violate the one-act, one-crime doctrine and we should vacate those convictions and sentences.

¶ 24                                    A. Sentencing

¶ 25 Every criminal defendant has the right to be sentenced based on only proper sentencing factors. *People v. Martin*, 119 Ill. 2d 453, 458 (1988); *People v. Larson*, 2022 IL App (3d) 190482, ¶ 32. When setting a defendant's sentence, the trial court may consider "(1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense;

(3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Klein*, 2022 IL App (4th) 200599, ¶ 34. The court must consider the statutory factors listed in Illinois's Unified Code of Corrections (Code). See 730 ILCS 5/5-5-3.2 (West 2022); *id.* § 5-5-3.1; *People v. Brunner*, 2012 IL App (4th) 100708, ¶ 49. "[T]he most important sentencing factor is the seriousness of the offense, and the court need not give greater weight to rehabilitation or mitigating factors than to the severity of the offense." *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 112 (quoting *People v. Charles*, 2018 IL App (1st) 153625, ¶ 47).

¶ 26        Defendant concedes she did not preserve her sentencing arguments, but she argues that she received ineffective assistance of counsel because her attorney failed to sufficiently challenge the trial court's sentence. Criminal defendants have a constitutional right to the effective assistance of counsel and that right is violated where the attorney's performance is deficient and that deficiency prejudices the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it "fell below an objective standard of reasonableness." *Id.* at 688. A deficiency prejudiced the defendant where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶ 27        Defendant also asks us to review for plain error. The plain error doctrine allows us to address an unpreserved error when a clear or obvious error occurred and either "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Defendant claims that both prongs of plain error support reversal here. The first step in plain error review is to "determine whether a 'clear or obvious' error occurred at all." *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009).

¶ 28    In reviewing the trial court's sentencing decision, we afford "great deference" to the trial court, which "has broad discretionary powers in imposing a sentence." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Generally, a "sentence within the statutory limits will not be disturbed absent an abuse of discretion." *People v. Coleman*, 166 Ill. 2d 247, 258 (1995). "The appellate court may not substitute it's judgment for that of the trial court merely because it might have weighed those factors differently." *Klein*, 2022 IL App (4th) 200599, ¶ 37.

¶ 29    However, we review whether the trial court relied on an improper sentencing factor *de novo*. *People v. Mauricio*, 2014 IL App (2d) 121340, ¶ 15. "In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *Larson*, 2022 IL App (3d) 190482, ¶ 29; *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). There is a "strong presumption" that the "circuit court based its sentencing determination on proper legal reasoning." *People v. Solis*, 2019 IL App (4th) 170084, ¶ 26. "The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations." *Dowding*, 388 Ill. App. 3d at 943. If the trial court relied in part on an improper factor, we must reverse unless the weight assigned to the improper factor was "so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008). If the trial court relied on an improper aggravating factor and we are not able to determine the weight given to that factor, we must remand for resentencing. *People v. McCain*, 248 Ill. App. 3d 844, 853 (1993).

¶ 30                          1. *Deterrence*

¶ 31    Defendant first claims the trial court should not have relied on "deterrence" as an aggravating factor. According to defendant, the court found that incarceration is not necessary to deter drunk drivers. The court wondered aloud whether an increased sentence has any deterrent

effect. The court opined that alcohol companies and others who profit from alcohol should warn people about the dangers of alcohol. Citing *People v. Whitney*, 297 Ill. App. 3d 965, 969-71 (1998), and *People v. Murphy*, 2019 IL App (4th) 170646, ¶ 48, defendant argues that even if deterrence can sometimes be a valid aggravating factor, the trial court's findings show that this aggravating factor does not apply here, so the court erred by factoring deterrence into its sentence.

¶ 32          We disagree with defendant's characterization of the trial court's findings. The court undeniably concluded that deterrence mattered here. It said that the "aggravating factor that does exist would be paragraph seven, the sentence is necessary to deter others from committing the same crime."

¶ 33          Certainly, the trial court expressed some doubts and uncertainty about the deterrent effect. It asked, "[W]hat sentence can be entered at this point in time that would actually deter anybody else from going out and driving while drunk?" After recalling another DUI victim, Joshua Greene, and the driver, the court asked, "How does my sentence to prison deter anybody if nobody remembers the names?"

¶ 34          But the court ultimately resolved its ambivalence by concluding that its sentence acted as a deterrent. The court concluded that "[t]here is a sentence that is necessary to deter others and that needs to be out there." The court then urged defendant, "I would implore you while you are in custody to use your degree and work toward some event or some practice that could be employed to make sure that, you know, young kids find out the dangers of drinking, teenagers find it out, kids in their 20's." The court addressed deterrence again when it denied defendant's motion to reconsider. It told defendant, "That is in large part what you're being sentenced to the [DOC] for. It's to deter the behavior of others, yourself included for whenever you are released from custody." The court found that if it imposed a lesser sentence, it would be "deprecating the

seriousness of the offense." Viewing this discourse as a whole, we conclude that the trial court acknowledged some uncertainty regarding the deterrent benefits of a prison sentence but ultimately decided the sentence had deterrent value, including for defendant herself, and especially when people remember the victims and know about the consequences of driving drunk. *Larson*, 2022 IL App (3d) 190482, ¶ 29. There is no question that deterrence is a legally permissible aggravating factor. 730 ILCS 5/5-5-3.2(a)(7) (West 2022). We find that the trial court properly applied this statutory aggravating factor in this case.

¶ 35        Defendant compares this case to *Murphy*. In *Murphy*, a 16-year-old defendant was convicted of first degree murder and attempted first degree murder, and the trial court sentenced him to a total of 55 years in prison. *Murphy*, 2019 IL App (4th) 170646, ¶ 1. At sentencing, the trial court found, "certainly, there is potential for rehabilitation in the future." *Id.* ¶ 16. But the court still imposed a *de facto* life sentence, which, at least at that time, was permissible "only if the trial court determine[d] that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation" *Id.* ¶¶ 47, 48 (citing *People v. Holman*, 2017 IL 120655, ¶ 46); *cf. People v. Wilson*, 2023 IL 127666, ¶ 42. The appellate court vacated the defendant's sentence, concluding that a finding of a rehabilitative potential "contravene[d]" any conclusion of permanent incorrigibility. *Murphy*, 2019 IL App (4th) 170646, ¶ 48.

¶ 36        We do not find defendant's reliance on *Murphy* compelling. There, the trial court explicitly stated that one of the requirements for a *de facto* life sentence was not met. We see no comparable statement in the record here. The trial court never directly stated that its sentence has no deterrent value. It asked questions aloud, it expressed doubt, and it acknowledged that a prison sentence alone would not be sufficient to eliminate DUI-related deaths. But the court never found

that an increased sentence was not necessary to deter others from committing similar crimes. Instead, it explicitly found that its sentence was necessary for deterrence.

¶ 37　　　　　We are also unconvinced by defendant's citation to *Whitney*. In *Whitney*, the trial court sentenced the defendant in part based on a prior conviction for burglary. In fact, the defendant had no such prior conviction, and the trial court acknowledged this at a later hearing. *Whitney*, 297 Ill. App. 3d at 970. The appellate court remanded, finding an insufficient basis to confirm that the trial court relied on only proper factors at sentencing. *Id.* at 971. We do not find *Whitney* applicable here, where the court found deterrence was an applicable aggravating factor, as the Code allowed (730 ILCS 5/5-5-3.2(a)(7) (West 2022)), and where that finding was never disproved. That finding was well within the court's discretion, so we find no error.

¶ 38　　　　　　　　　　　　　2. *Independent Research*

¶ 39　　　　　Next, defendant contends that the trial court improperly based her sentence on evidence outside the record. "The law is well settled that, exclusive of certain matters of which the court may take judicial notice, the deliberations of the trial judge are limited to the exhibits offered and admitted in evidence and the record made before him in open court." *People v. Holland*, 2023 IL App (4th) 220384, ¶ 57 (quoting *People v. Rivers*, 410 Ill. 410, 416 (1951)). When discussing deterrence, the trial court here said, "NHTSA came out with a form after a study in 2020 that approximately one person dies every 45 to 50 minutes in the United States because of alcohol-related accidents. What's going to change that? You have to get out. That's what the deterrence is about." In its reflection on deterrence, the court referred to other DUI cases it had presided over. Relying on *People v. Dameron*, 196 Ill. 2d 156, 171 (2001), defendant argues these statements brought in the trial court's independent research and private knowledge, which violated her right to an individualized sentencing hearing.

¶ 40        We are not persuaded the trial court relied on any improper information to enhance defendant's sentence. "The fact that a sentencing judge added some personal observations, while not to be encouraged, does not amount to an abuse of discretion." *People v. Kolzow*, 301 Ill. App. 3d 1, 9 (1998). "Any additional comments or observations made by the trial judge are of no consequence where the record shows the court otherwise considered proper sentencing factors." *Id.* Moreover, we assume "that a judge, in a bench proceeding, considers only competent evidence in making a finding." *People v. Tye*, 141 Ill. 2d 1, 26 (1990). "This assumption will be overcome only if the record affirmatively demonstrates the contrary, as where it is established that the court's finding rests on a private investigation of the evidence, or on other private knowledge about the facts in the case." *Id.*

¶ 41        The trial court's additional commentary here was "inconsequential." *Kolzow*, 301 Ill. App. 3d at 9. Defendant's sentence of 14 years' incarceration was well within the statutory range of 6 to 28 years. The record shows that the court considered proper sentencing factors. It thoroughly reviewed the mitigating factors. It extensively discussed one aggravating factor— deterrence. Nothing in the record indicates that the specific numbers or any details of the NHTSA study led the court to increase defendant's sentence. The same reasoning applies to the references to the court's other DUI cases. The very short statements regarding the NHTSA study and other DUI cases merely lamented the prevalence of alcohol-related deaths and injuries, and we do not find this to be an abuse of discretion. See *People v. Bosley*, 197 Ill. App. 3d 215, 222 (1990) (finding that the trial court did not rely on facts outside the record or its own personal opinion when it commented on recidivism rates among sex offenders).

¶ 42        Defendant also cites *Dameron*. There, a jury had found the defendant guilty of first degree murder, and the trial court sentenced him to death. *Dameron*, 196 Ill. 2d at 159. During the

sentencing hearing, the trial judge explained that as he heard the evidence, he was reminded of a social science treatise he had read. *Id.* at 172. He revisited the treatise and commented on similarities between an individual discussed therein and the defendant. *Id*. He quoted extensively from the book. *Id.* at 172-74. The treatise cited criminologists who had concluded that violent adult criminals have learned that violence helps them get what they want and that they like acting violently, and the judge relied on this conclusion in deciding on a sentence. *Id.* at 176. The judge also discussed a case that his father, who had also been an Illinois circuit court judge, presided over. *Id.* at 177. The judge directly quoted his father's comments at a sentencing hearing from decades earlier in which he had also imposed the death penalty. *Id.* at 178.

¶ 43 The supreme court reversed the defendant's sentence. *Id.* at 179. It found that the judge improperly relied on information he found during his own investigation. He spoke "at length" about the statistics and generalizations he found. *Id.* at 176. The court reasoned that the perspective on violent adult criminals discussed in the treatise conflicted with evidence that was presented in that very case, in the form of a psychology expert's testimony that the defendant cared for others and felt remorse for his violence. *Id.* at 177. Likewise, by comparing the defendant's case to one his father had presided over, the judge "looked outside the record" and "aligned himself with his father in imposing the death penalty." *Id.* at 178.

¶ 44 We find this case easily distinguishable. Unlike in *Dameron*, where the judge noted that he sought out the treatise, nothing in the record indicates that the trial judge affirmatively sought out the NHTSA study to use in this sentencing decision. Moreover, the judge's comment on the NHTSA study constituted only a small part of his extended analysis of deterrence within his lengthy discussion of many statutory factors. The judge did not mention the study at all when he explained the sentence at the hearing on defendant's motion to reconsider. The judge's

references to other DUI cases were similarly brief. It does not appear that the judge extensively quoted from either the study or his prior sentencing decision at either defendant's initial sentencing hearing or at the hearing on defendant's motion to reconsider. In contrast, the *Dameron* judge's discussion and quotes from the treatise, "together with his references to his father's comments, comprise nearly half of his total sentencing comments." *Id.* Perhaps most importantly, here, the trial court did not rely on any material outside the record that conflicted with evidence in the record, as the trial court did in *Dameron*. For all these reasons, we find that the trial court's statements amounted to a few "personal observations" and did not constitute an abuse of discretion. *Kolzow*, 301 Ill. App. 3d at 9.

¶ 45                                    3. *Pregnancy*

¶ 46            Defendant argues that the trial court treated her pregnancy as an aggravating factor in calculating her sentence. The United States Constitution protects the right to procreate, and prevention of pregnancy is not a justification for incarceration. *People v. Negrete*, 258 Ill. App. 3d 27, 31 (1994); *People v. Bedenkop*, 252 Ill. App. 3d 419, 427 (1993). The Code explicitly says that pregnancy is a mitigating factor in sentencing. 730 ILCS 5/5-5-3.1(a)(18) (West 2022). Here, defendant was pregnant at the time of sentencing. At the hearing on defendant's motion to reconsider, the trial court said:

> "[T]he circumstances upon which you got pregnant, the timing upon which you got pregnant wasn't necessarily mitigating to me. That just showed me that while you knew you were likely going to prison, you chose to get pregnant instead, which suggested to me a complete indifference to your child, to yourself, to the child's father."

The court made other disapproving comments about defendant's pregnancy such as, "It was a bad idea," and, "You should've known better." Based on these and similar statements, defendant claims the trial court improperly treated her pregnancy as an aggravating factor.

¶ 47    Defendant relies on *Negrete*, *Bedenkop*, and *People v. Smothers*, 70 Ill. App. 3d 589, 590 (1979). In *Negrete*, the defendant was found guilty of heinous battery of her young son and sentenced to 45 years in prison. *Negrete*, 258 Ill. App. 3d at 28. At her sentencing hearing, the trial court stated, "I believe it's a legitimate concern and a legitimate basis for removing [the defendant] from society as a whole to a situation where she will not become pregnant probably again. I think that's important. *Id.* at 31. She has already demonstrated how she treats her young." *Id.* at 31. The appellate court found that a "sentence imposed to deter pregnancy is improper," vacated the defendant's sentence, and remanded for a new sentencing hearing. *Id.* In *Bedenkop*, the trial court had revoked the defendant's probation for two drug charges and sentenced her to seven years in prison. *Bedenkop*, 252 Ill. App. 3d at 420. The trial court had told the defendant:

> "These children of yours are presently—all four of your children are in private placement. I think that with respect to sentencing, I'm not here to punish you, ma'am, believe me I have no intention of doing that, but I certainly am going to preclude you as best I can for as long as I can from becoming pregnant." *Id.* at 426-27.

The appellate court was "particularly disturbed" by this comment, and it reversed the trial court's decision. *Id.* at 427; see *Smothers*, 70 Ill. App. 3d at 590 (finding that the defendant's sentence of four months' incarceration for possession of cannabis was based on improper considerations because the trial court expressed disapproval of his "life style" and said that he "left one home

- 19 -

broken," then was "living with another lady out of wedlock, and to this marriage [was] born a child").

¶ 48    Viewing the record in its entirety (*Larson*, 2022 IL App (3d) 190482, ¶ 29) and starting from the presumption that the trial court acted properly (*Solis*, 2019 IL App (4th) 170084, ¶ 26), we do not find that the court relied on defendant's pregnancy as an aggravating factor. The court did not mention the pregnancy at all during its prolonged discussion at the sentencing hearing. The court commented on the pregnancy only in response to the reference to defendant's pregnancy in her motion to reconsider. When it finally discussed defendant's pregnancy, the court explicitly stated that pregnancy was a "factor in mitigation," as was appropriate under Illinois law.

¶ 49    We find these facts sufficient to distinguish *Negrete*, *Bedenkop*, and *Smothers*. In each case, there was no doubt that the sentencing court treated the defendant's pregnancy or procreation as an aggravating factor. Indeed, in both *Negrete* and *Bedenkop*, the court stated openly that it was sentencing the defendant specifically to prevent her from becoming pregnant again. *Negrete*, 258 Ill. App. 3d at 31; *Bedenkop*, 252 Ill. App. 3d at 427. Even in *Smothers*, the defendant's "life style" was one of only two or three considerations that the trial court discussed at sentencing. *Smothers*, 70 Ill. App. 3d at 590-91. Here, the trial court's comments on defendant's pregnancy were appended later to its otherwise thorough discussion at the initial sentencing hearing, and it properly acknowledged pregnancy as mitigating.

¶ 50    Admittedly, the trial court here qualified its statements by saying the "circumstances" under which defendant "got pregnant *** wasn't necessarily mitigating." But the "circumstances" of defendant's pregnancy are not a relevant factor either in mitigation or aggravation here. This means that the court's decision to discuss these irrelevant "circumstances"

was unnecessary and perhaps inadvisable. But the court further acknowledged that it did not take these circumstances "into consideration as far as—as punishing [defendant]."

¶ 51        We need not rely solely on these isolated statements from the trial court to conclude that it did not increase defendant's sentence based on her pregnancy. We can consider the sentence itself. The sentencing range for her conviction was 6 to 28 years' incarceration. The State asked for a sentence of not less than 20 years. The court's sentence of 14 years was substantially less than what the State requested and far below the statutory maximum. Indeed, defendant's sentence was closer to the statutory minimum than the maximum. The court also explicitly stated that deterrence was "in large part what [defendant was] being sentenced to the [DOC] for." Considering the entirety of the court's explanation of its sentence, we find defendant has not met her burden of affirmatively establishing that the court based her sentence on improper considerations. *Dowding*, 388 Ill. App. 3d at 942-43.

¶ 52                                        4. *Victim Impact Statements*

¶ 53        Finally, defendant argues that the trial court improperly considered inappropriate victim impact statements. Illinois's Constitution and the Rights of Crime Victims and Witnesses Act (Act) provide victims of crimes with the right to be heard at sentencing. Ill. Const. 1970, art. I, § 8.1(a)(5); 725 ILCS 120/6 (West 2022). The Act states that where a defendant is convicted of a motor vehicle offense resulting in death, a representative of the deceased victim

> "shall have the right to address the court regarding the impact that the defendant's criminal conduct has had upon them. *** [T]he court has discretion to permit one or more of the representatives to present an oral impact statement. *** The court shall consider any impact statement presented along with all other appropriate

factors in determining the sentence of the defendant." 725 ILCS 120/6(a-1) (West 2022).

Under the Act, " '[r]epresentative' includes the spouse, guardian, grandparent, or other immediate family or household member of an injured or deceased person." *Id.*

¶ 54    Defendant claims that the victim impact statements in this case did not comply with the Act's terms. She argues that the Act's definition of "representative" does not include extended relatives, like a cousin, aunt, or uncle. *Id.* Defendant insists that the trial court should not have allowed Rosewicz's cousin or aunt and uncle to provide statements. Defendant further argues that the content of the victim impact statements was impermissibly prejudicial and included improper sentencing recommendations. Citing *People v. Howard*, 147 Ill. 2d 103, 162 (1991), *People v. Fisher*, 2023 IL App (4th) 220717, ¶ 31, and *People v. Chapman*, 194 Ill. 2d 186, 246 (2000), she contends that a witness's opinions are not a proper consideration in sentencing decisions.

¶ 55    We cannot grant any relief based on this argument. Section 8.1(e) of article I of the Illinois Constitution, which guarantees crime victims the right to be heard at sentencing hearings, states, "Nothing in this Section or any law enacted under this Section shall be construed as creating (1) a basis for vacating a conviction or (2) a ground for any relief requested by the defendant." Ill. Const. 1970, art. I, § 8.1(e). Pursuant to this provision, the Act likewise states, "Nothing in this Act shall create a basis for vacating a conviction or a ground for relief requested by the defendant in any criminal case." 725 ILCS 120/9 (West 2022). These sections prohibit this court from granting a defendant relief for violations of the Act. See *People v. Richardson*, 196 Ill. 2d 225, 230 (2001). Indeed, as our supreme court interpreted section 8.1(d) of article I of the Illinois Constitution (Ill. Const. 1970, art. I, § 8.1(d)), we do not have jurisdiction over this issue. *Richardson*, 196 Ill. 2d at 231.

¶ 56        Defendant acknowledges the limitation on appellate review of victim impact statements, but she argues that the victim impact statements here were so prejudicial that they violated her right to due process of law. In *Richardson*, the supreme court suggested an improper impact statement could be " 'so unduly prejudicial that it renders the trial fundamentally unfair,' " such that " 'the Due Process Clause of the Fourteenth Amendment [(U.S. Const., amend. XIV)] provides a mechanism for relief.' " *Id.* at 233 (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). Defendant asks us to grant such relief here.

¶ 57        We cannot do so. The Illinois Constitution, the Act, and the supreme court's decision in *Richardson* all clearly state we cannot grant a defendant relief based on victim impact statements or the Act. See Ill. Const. 1970, art. I, § 8.1(d); 725 ILCS 120/9 (West 2022); *Richardson*, 196 Ill. 2d at 230. We are aware of no Illinois Supreme Court or appellate court case reversing any trial court decision based on victim impact statements. If defendant's due process argument applied here, it would seem to apply to nearly every violation of the Act. We see no basis for distinguishing this case from *Richardson*, where the trial court improperly allowed three victim impact statements into evidence, even though the Act specified that only one such statement was admissible in that context. *Richardson*, 196 Ill. 2d at 229. See *People v. Enk*, 2023 IL App (4th) 220580-U, ¶ 30; *People v. Merrick*, 2012 IL App (3d) 100551, ¶ 39.

¶ 58        We note that here, the trial court did not rely on the victim impact statements in its sentence. At both the initial sentencing hearing and the hearing on defendant's motion to reconsider, the court hardly mentioned the statements at all. When the court did refer to the victim impact statements, it noted that the victims' "family wants maximum, 28 years," but the court did not impose the sentence the family requested. As noted above, the court imposed a sentence that was closer to the statutory minimum than the maximum, and it relied primarily on deterrence as

the sole aggravating factor. We do not find that defendant was prejudiced by the victim impact statements here.

¶ 59      We find that the trial court properly considered deterrence as an aggravating factor. We find that the court did not increase defendant's sentence based on her pregnancy or any independent research. We cannot grant defendant relief based on any victim impact statement errors. We do not find that defendant was prejudiced by any errors at her sentencing. We therefore reject defendant's claims of plain error and ineffective assistance of counsel at sentencing.

¶ 60                          B. One-Act, One-Crime

¶ 61      Defendant claims her conviction for two counts of aggravated DUI violated the one-act, one-crime doctrine and we should vacate one of those convictions. In her supplemental brief, she further claims her conviction for two counts of aggravated reckless driving also violated that doctrine. The State agrees with both claims, and so do we.

¶ 62      Under the one-act, one-crime doctrine, "if a defendant is convicted of two offenses based upon the same single physical act, the conviction for the less serious offense must be vacated." *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). We review whether the trial court erred under the one-act, one-crime doctrine *de novo*. *People v. Nunez*, 236 Ill. 2d 488, 493 (2010). Defendant did not preserve this issue by objecting at trial, but she asks us to review for plain error. A one-act, one-crime doctrine violation is reversible under the second prong of the plain error doctrine because it is "an obvious error so serious that it challenges the integrity of the judicial process." *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 63      Defendant was convicted of two counts of aggravated DUI in violation of section 11-501(d)(1)(F) of the Illinois Vehicle Code (625 ILCS 5/11-501(d)(1)(F) (West 2022)). Both counts pertained to the incident on April 10, 2022. Count I alleged defendant's conduct resulted in

the death of Andrea Rosewicz, and count II alleged her conduct resulted in the death of Paul Prowant. Otherwise, the factual allegations were identical.

¶ 64        The supreme court considered nearly this exact situation in *People v. Lavallier*, 187 Ill. 2d 464, 468 (1999), and held a single incident resulting in harm to multiple victims does not support multiple convictions of aggravated DUI. The court reasoned section 501(d) creates the offense of misdemeanor DUI, then adds certain aggravating factors that enhance the offense to a Class 4 felony, such as causing great bodily harm. *Id.* at 469. The court added, even when an aggravating factor is present, "the essential and underlying criminal act remains the same: driving while under the influence of alcohol." *Id.* The court concluded, "the occurrence of great bodily harm or permanent disability or disfigurement to another aggravates the underlying DUI offense from a misdemeanor to a felony, but it does not constitute, in these circumstances, a separate offense for each person injured." *Id.*

¶ 65        Defendant was convicted of the same offense as the defendant in *Lavallier*, aggravated DUI. We find no basis to treat defendant's conviction differently from *Lavallier*. Accordingly, we vacate defendant's conviction and sentence under count II.

¶ 66        Defendant was also charged with two counts of aggravated reckless driving. Count III alleged defendant drove her vehicle "with a willful and wanton disregard for the safety of persons or property and in so doing caused great bodily harm or permanent disability or disfigurement or death to Andrea Rosewicz." Count IV alleged defendant drove her vehicle "with a willful and wanton disregard for the safety of persons or property and in so doing caused great bodily harm or permanent disability or disfigurement or death to Paul Prowant." As with the aggravated DUI charges, the factual allegations pertained to the same incident and were identical, except for the name of the victim.

¶ 67    Defendant was convicted under section 11-503(a)(1) of the Vehicle Code (625 ILCS 5/11-503(a)(1) (West 2022)), which states, " A person commits reckless driving if he or she: (1) drives any vehicle with a willful or wanton disregard for the safety of persons or property." Subsection (c) adds, "Every person convicted of committing a violation of subsection (a) shall be guilty of aggravated reckless driving if the violation results in great bodily harm or permanent disability or disfigurement to another." *Id.* § 11-503(c).

¶ 68    Once again, *Lavallier* guides our analysis. Just as for aggravated DUI, the offense of aggravated reckless driving starts with an underlying misdemeanor but becomes enhanced by an aggravating factor. See *Lavallier*, 187 Ill. 2d at 469; 625 ILCS 5/11-503(a)(1), (c) (West 2022). We find, even when an aggravating factor is present, "the essential and underlying criminal act remains the same." See *Lavallier*, 187 Ill. 2d at 449. For count III and count IV, that criminal act was recklessly driving a vehicle. The death of a victim "aggravates" the crime, "but it does not constitute, in these circumstances, a separate offense for each person injured." *Id.*

¶ 69    In count III and count IV of the indictment, the State alleged defendant drove recklessly once and killed two people. The State did not allege defendant engaged in two separate acts of driving recklessly. Therefore, we find defendant's two convictions for aggravated reckless driving resulted from the same act, and the deaths of two victims aggravates that singular crime but does not provide a basis for two separate convictions. Accordingly, we vacate defendant's conviction and sentence under count IV.

¶ 70    III. CONCLUSION

¶ 71    For the foregoing reasons, defendant's convictions and sentences for count II and count IV are vacated. Defendant's sentence for count I, however, is affirmed.

¶ 72    Affirmed in part and vacated in part.