2022 IL App (3d) 190482

Opinion filed January 10, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0482 Circuit No. 16-CF-277 |
| | ) | |
| CARMELLA S. LARSON, | ) ) | Honorable Ronald J. Gerts, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Daugherity and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Carmella S. Larson, appeals following her conviction for aggravated driving

under the influence (DUI). She does not challenge her conviction but argues that the trial court

committed multiple errors at sentencing. We vacate defendant's sentence and remand for

resentencing.

¶ 2                                I. BACKGROUND

¶ 3        The State charged defendant via indictment with six counts of aggravated DUI. Counts I

and II of the indictment charged defendant with causing the death of Kameron Allison while

committing DUI (625 ILCS 5/11-501(d)(1)(F) (West 2016)). Counts III and IV charged

defendant with causing great bodily harm to Kyuss Allison while committing DUI (*id.* § 11-501(d)(1)(C)). Counts V and VI charged defendant with causing great bodily harm to Nathan Lockhart while committing DUI (*id.*). Each pair of charges alleged separate grounds on which the underlying DUI was committed, one premised upon a blood alcohol concentration greater than 0.08 (*id.* § 11-501(a)(1)) and one premised upon being under the influence of alcohol (*id.* § 11-501(a)(2)).

¶ 4 The evidence at defendant's trial showed that defendant was driving a car, with Lockhart as her passenger, on the night of May 15, 2016. Defendant was traveling southbound on 19000 Road, approaching a T-intersection where 19000 Road ended at Route 17. At the same time, 16-year-old Kyuss Allison was driving a car westbound on Route 17. His 15-year-old brother, Kameron, was a passenger in the car.

¶ 5 The stop sign directing traffic on 19000 Road to stop at the T-intersection was missing on the night in question. As both cars approached the intersection, Kyuss observed that defendant's car was "going kind of fast." Kyuss accelerated in an attempt to safely clear the intersection. Drivers on Route 17 were not required to stop at the intersection.

¶ 6 The two cars collided. Accident reconstruction testimony established that defendant was traveling at 51 miles per hour at the time of impact while Kyuss was traveling at 76 miles per hour. Lockhart's injuries included a broken sternum and a lacerated kidney. Kyuss suffered a broken pelvis, broken hips, and a collapsed lung. Kameron died at the scene.

¶ 7 Evidence was introduced establishing that defendant had been drinking alcohol earlier that afternoon and evening. Law enforcement officers observed that a strong odor of alcohol emanated from defendant's breath, that defendant's speech was low and mumbled, and that her

eyes were glassy and red. A blood test showed that defendant's blood alcohol concentration was 0.186. A later test showed her blood alcohol content to be 0.094.

¶ 8    The jury found defendant guilty of counts I through IV—the four counts contemplating the Allisons as victims—while finding her not guilty of the two counts relating to Lockhart.[1]

¶ 9    A presentence investigation report (PSI) revealed that defendant had no prior delinquency adjudications, nor did she have any prior convictions for felonies or misdemeanors. It also indicated that defendant had 9- and 12-year-old sons.

¶ 10    The PSI detailed defendant's struggles with alcohol. On July 11, 2016, after the accident, she was placed on an alcohol monitoring device. She had submitted 6256 breath tests since that time. Only one of those tests was considered positive, but it was followed immediately by a compliant secondary test 17 minutes later. Defendant reported that she had engaged in DUI classes and had been sober for the three years between the accident and the sentencing hearing. In a letter included in the PSI, defendant indicated that Lockhart had originally been driving the vehicle on the night of the accident. Defendant soon realized that Lockhart was incapable of driving and asked him to pull over so that she could drive.

¶ 11    At the sentencing hearing, the State presented 16 victim impact statements. The first of these statements was read by Trina Wesemann, the Allisons' mother. Wesemann detailed Kameron's life and her family's grief. She accused defendant's family of attacking her children on social media. Wesemann closed her statement by requesting that the court impose the maximum sentence. Defense counsel objected to the sentence recommendation and asked that it

---

[1]Defendant filed a timely motion for judgment notwithstanding the verdict on the ground that the jury's verdicts were inconsistent. The court denied that motion.

be stricken from the record. The court declined to strike the sentence recommendation from the record, commenting that "I have to take it into context of a layperson and mother of the victim."

¶ 12 Following Wesemann's statement, the following people read their own victim impact statements to the court: the Allisons' father, the Allisons' great-grandmother, the mother of the Allisons' noncustodial stepmother, the Allisons' aunt, and the Allisons' younger sister Kloe. Kloe accused defendant's family of glaring at her in court and sending "degrading" messages to Wesemann. The State read victim impact statements from the Allisons' grandmother, the Allisons' noncustodial stepmother, Wesemann's friend, three friends of Kameron, the mother of one of Kameron's friends, the Allisons' great-aunt, Kyuss's girlfriend, and Kyuss.

¶ 13 Six of the sixteen statements included some form of a request that defendant receive the maximum prison sentence. Additionally, Kyuss's statement concluded with a request that the court "[l]ock her up." On each occasion, the trial court overruled defense counsel's objection. The court observed that it was "common" for friends and family of a victim to request maximum sentences, adding that "[i]t's nothing to do with the Court, and it doesn't disqualify their statement." Each of the statements described Kameron as well as the impact his death had upon the author of the statement. In addition, many of the statements condemned defendant for a lack of remorse and referred to her as "selfish."

¶ 14 Defendant presented testimony from her aunt, who described defendant's difficult and transient upbringing. Another witness described defendant as a "wonderful mother." The court questioned defendant's then-13-year-old son *in camera*. He testified that defendant was primarily responsible for his care, including cooking, making appointments, staying home when he was sick, talking with him about his problems, enforcing his bedtime, and generally providing

4

stability. Defendant's son opined that his father was less able to do those things because he worked the midnight shift.

¶ 15    In allocution, defendant stated that she was remorseful for the accident. She continued: "I accept full responsibility for getting behind the wheel after drinking. There is and never will be a good enough excuse for my actions, and I don't intend on making any." Defendant apologized and commented that it was hard to ask for forgiveness when she could not forgive herself.

¶ 16    The State requested the maximum sentence of 14 years' imprisonment, urging the court to "show this county what happens when you drink and drive and you kill one of our kids." It also emphasized the court and treatment resources expended as a result of frequent DUI offenses in the county. The State asserted that defendant had shown no remorse. It argued that the 14-year maximum sentence was insufficient in comparison to the prescribed sentences for murder offenses.

¶ 17    Defense counsel requested a sentence of probation. He contended that the following mitigating circumstances existed: defendant drove on the night in question only to prevent an intoxicated Lockhart from driving, the stop sign prior to the intersection was down, Kyuss had accelerated to a high speed, defendant had shown great remorse, defendant had two young sons, and defendant had stopped drinking alcohol. He also pointed out defendant's total lack of a criminal record. Counsel argued that these mitigating factors also constituted extraordinary circumstances, as statutorily required for the court to impose a sentence of probation.

¶ 18    At the outset of its pronouncement of sentence, the court noted that it had considered all of the evidence, including written letters and oral statements. The court then stated:

> "The Court must address factors in aggravation and mitigation. The factors in aggravation, which means things that—facts that would urge for a

5

longer sentence, come down to one. Under the Unified Code of Correction[s], Article 5, Section 5-5-3.2, your conduct caused great harm."

In mitigation, the court observed that defendant had not intended to cause such harm, she had no prior criminal history, and that a sentence of imprisonment would cause hardship to her children. It also observed that defendant's "record would indicate [she] probably wouldn't commit another crime, and [was] more likely to comply with a sentence of probation." The court added, however, that those factors were "speculative."

¶ 19    The court agreed that Kyuss's decision to accelerate was a mitigating fact and that pointing that out was not tantamount to shifting the blame. Still, the court noted that it made defendant no less guilty of the offense, stating: "You are a cause of Kameron Allison's death. You are not the sole cause of Kameron's death." The court also rejected the State's comparison of defendant's offense to murder but added: "[N]onetheless, you have violated a serious criminal statute. You have caused a young man's death." It also pointed out that the purpose of sentencing was not to send a message to the county.

¶ 20    The court sentenced defendant to a term of six years' imprisonment to be followed by a three-year term of MSR. The subsequent written sentencing order reflected the same terms.

¶ 21                                II. ANALYSIS

¶ 22    Defendant raises three arguments on appeal. First, she contends that the trial court erred in considering Kameron's death in aggravation, because his death was a factor inherent in the offense of aggravated DUI. Second, defendant argues that the court erred at sentencing by allowing the State to introduce such a large number of victim impact statements. Finally, defendant asserts that the court imposed an incorrect term of MSR. Defendant concedes that she

6

failed to properly preserve each of these issues for appellate review but argues that the errors are reversible under both prongs of the plain error doctrine.

¶ 23 The plain error test provides a framework under which a reviewing court may consider claims of error not properly preserved by a defendant. The first step in any plain error analysis is to determine whether a clear, obvious, or plain error was committed. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Where such an error was committed, defendant bears the burden of proving that the error was prejudicial and, thus, reversible. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 24 In the plain error context, prejudice may be demonstrated in one of two ways: first, a defendant may demonstrate that the trial evidence was so closely balanced that the error threatened to impact the result of the trial. *People v. Sebby*, 2017 IL 119445, ¶ 51. Second, a defendant may show that an error is so serious that prejudice is presumed, regardless of the closeness of the evidence. *Id.* ¶ 50.

¶ 25                              A. Factor Inherent in the Offense

¶ 26 A sentencing court is prohibited from considering in aggravation a fact that is implicit or inherent in the criminal offense for which the defendant is convicted. *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). This bar on double enhancements "is based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *Id.* at 12.

¶ 27 Section 5-5-3.2 of the Unified Code of Corrections enumerates several factors in aggravation that a court may consider as a reason to impose a more severe sentence. 730 ILCS 5/5-5-3.2(a) (West 2018). The first of those factors is that "the defendant's conduct caused or

threatened serious harm." *Id.* § 5-5-3.2(a)(1). In this case, the trial court found that this aggravating factor was applicable to defendant.

¶ 28    Due to merger of the other counts on which she was found guilty, defendant was sentenced only for the Class 2 felony offense of aggravated DUI under section 11-501(d)(1)(F) of the Illinois Vehicle Code. 625 ILCS 5/11-501(d)(1)(F), (d)(2)(G) (West 2016). That subsection establishes that aggravated DUI is committed where a person, in committing DUI under subsection (a), "was involved in a motor vehicle *** accident that resulted in the death of another person, when the violation of subsection (a) was a proximate cause of the death." *Id.* § 11-501(d)(1)(F).

¶ 29    The question of whether the trial court relied upon an improper sentencing factor is reviewed *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). "A sentence based on improper factors will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008).

¶ 30    Serious harm is a fact inherent in the offense of aggravated DUI for which defendant was convicted. Aggravated DUI under subsection (d)(1)(F) requires the death of a victim and cannot be committed otherwise. Because the death is implicit in the offense, it may not be considered as a factor in aggravation. *Phelps*, 211 Ill. 2d at 11-12; see also *Dowding*, 388 Ill. App. 3d at 943 ("[T]he trial court may not consider the end result, *i.e.*, the victim's death, as a factor in aggravation where death is implicit in the offense." (Emphasis omitted.)).

8

¶ 31        In the instant case, the trial court was explicit in stating that the aggravating factor of serious harm was applicable in this case. *Supra* ¶ 18. In fact, the court stated that the serious harm caused by defendant was the *only* aggravating factor in the case. Thus, it is clear that the court considered a factor inherent in the offense. Moreover, given that the court indicated that this was the only aggravating factor, it is impossible to conclude that the weight placed on that factor "was so insignificant that it did not lead to a greater sentence." *Heider*, 231 Ill. 2d at 21. Even assuming, *arguendo*, that the trial court could properly consider the serious harm done to the other victims in this case—Kyuss and Lockhart—the record makes clear that this was not the harm referenced by the court in aggravation. The entire focus of the sentencing hearing, from the victim impact statements to the court's own comments, was Kameron's death. The court committed clear and obvious error by considering that death in aggravation. See *Piatkowski*, 225 Ill. 2d at 565.

¶ 32        The trial court's error is reversible under either prong of the plain error test. Our supreme court has made clear that imposition of a sentence based upon a factor inherent in the offense impinges upon a defendant's fundamental right to liberty. *People v. Martin*, 119 Ill. 2d 453, 458 (1988). This requires reversal under the second prong of the plain error test. *E.g. People v. Sanders*, 2016 IL App (3d) 130511, ¶ 17. Further, the evidence at sentencing was closely balanced, necessitating reversal under the first prong as well. See *Martin*, 119 Ill. 2d at 458 ("The evidence presented at the sentencing hearing was not simply closely balanced, it strongly favored leniency for the defendant."). The only aggravating factor cited by the court was improper. In contrast, the following facts or factors in mitigation existed: defendant did not intend to cause harm, defendant had no prior criminal history, a sentence of imprisonment would cause hardship to defendant's children, Kyuss's decision to accelerate and the missing stop sign

9

were contributing factors to the accident, defendant was driving only to prevent Lockhart from driving while impaired, defendant had abstained from alcohol since the accident, and defendant expressed great remorse in allocution.

¶ 33      Accordingly, we vacate defendant's sentence and remand the matter for resentencing.

¶ 34      <center>B. Victim Impact Statements</center>

¶ 35      Our vacatur of defendant's sentence obviates the strict need to address the remaining issues. However, a reviewing court has the authority to address additional claims where the error in question is likely to recur on remand. *People v. Walker*, 211 Ill. 2d 317, 343 (2004). Because we find that the issues relating to victim impact evidence and MSR are each likely to recur on remand, we elect to discuss those issues further.

¶ 36      The Illinois Constitution, via amendment adopted in 1992, prescribes numerous rights for crime victims, including the right to be heard at sentencing. Ill. Const. 1970, art. I, § 8.1(a)(5). That right is codified and expanded in the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/6 (West 2018)). The Act provides that, where a defendant is convicted of a motor vehicle offense resulting in great bodily harm or death,

> "a representative of the deceased person shall have the right to address the court regarding the impact that the defendant's criminal conduct has had upon them. *** [T]he court has discretion to permit one or more of the representatives to present an oral impact statement. *** The court shall consider any impact statement presented along with all other appropriate factors in determining the sentence of the defendant." *Id.* § 6(a-1).

The Act further defines a " 'Representative' " as including "the spouse, guardian, grandparent, or other immediate family or household member of an injured or deceased person." *Id.*

<center>10</center>

¶ 37    The plain language of the statute thus contemplates impact statements limited in number (the victim or, in the event of a death, "a" representative of the deceased person); source (a "representative" of the deceased person); and content (impact "upon them" of the defendant's criminal conduct). To that final point, the purpose of the statute is to ensure that the sentencing judge will be informed of the full impact of the offense—be it the pain and loss suffered by a grieving family or the myriad ways in which a still-living victim has been and continues to be affected by the offense—so that that information may be factored into the sentencing calculus. The statute does not serve as an invitation to rail against the defendant or to recommend a certain sentence to the court, and the State would be well served to so advise the authors of such statements prior to the sentencing hearing.

¶ 38    The trial court clearly erred in allowing *most* of the victim impact statements to be introduced at defendant's sentencing hearing. Of the 16 statements presented, only 5 clearly met the definition of "representative." The remaining 11 victim impact statements were apparently unauthorized by the Act.[2] Furthermore, while the Act provides the trial court with discretion to allow statements from multiple representatives, the record here reflects that the trial court did not engage in a reasoned exercise of that discretion. The State did not present the court with a list of witnesses who intended to make statements; rather, the State tendered the statements to the court as they were read. Thus, the court was not made aware of the number of victim impact statements that would be introduced.

_____

[2]The apparently unauthorized victim impact statements were those from the Allisons' great-grandmother, the mother of the Allisons' noncustodial stepmother, said stepmother, the Allisons' aunt, Wesemann's friend, three of Kameron's friends, the mother of one of Kameron's friends, the Allisons' great-aunt, and Kyuss's girlfriend. We recognize that we cannot definitively conclude that any of these people were not "household member[s] of" Kameron, such that they would qualify as a representative. However, the record provides no indication that any of these people lived with Kameron, and the State makes no argument that their statements were authorized by the Act.

11

¶ 39 In the context of a violent crime, the Act provides the trial court with the discretion to allow any "persons impacted by the crime who are not victims" to make additional victim impact statements. *Id.* § 6(a). By eliminating that discretion in the context of a motor vehicle offense and limiting the admissibility of victim impact statements to those made by actual victims or their representatives, the legislature clearly evinced an intent that these particular sentencing hearings must not devolve into an interminable parade of victim impact statements. This limitation was, presumably, imposed in recognition of that fact that victim impact evidence may become so excessive as to deprive a defendant of a fair sentencing hearing and thus violate his or her right to due process. See *People v. Richardson*, 196 Ill. 2d 225, 233 (2001); see also *Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998) ("[V]ictim impact and character evidence may become unfairly prejudicial through sheer volume.").

¶ 40 While the trial court here did have the discretion to allow more than one representative to make a victim impact statement, it had no discretion to allow nonrepresentatives to make such statements. Nor did it have discretion to permit the representatives to make sentencing demands or accusations against the defendant unrelated to the impact of Kameron's death upon them. Those statements were unauthorized by the Act. To echo our supreme court, "we remind the trial courts of their obligation to comply with the statute." *People v. Somers*, 2013 IL 114054, ¶ 18. The court is obligated to bar any statements by nonrepresentatives, to exercise discretion with respect to any additional victim impact statements beyond those specifically provided as a right under the Act, and to limit any statements made to the impact of the offense upon the author of the statement. The court is no less obligated and no less constrained by the Act when a defendant fails to raise an objection. We instruct the trial court in this case to adhere to the requirements of the Act on remand.

¶ 41                                    C. MSR

¶ 42        The aggravated DUI offense for which defendant was sentenced was a Class 2 felony.

625 ILCS 5/11-501(d)(1)(F), (d)(2)(G) (West 2016). Section 5-4.5-35(*l*) of the Unified Code of

Corrections establishes that a two-year period of MSR shall be applied to all sentences for Class

2 felonies "upon release from imprisonment." 730 ILCS 5/5-4.5-35(*l*) (West 2018). The State

concedes that the three-year term of MSR imposed by the court was incorrect and does not argue

forfeiture. If, upon remand, the trial court imposes a sentence requiring a term of MSR, that term

should be two years.

¶ 43                                III. CONCLUSION

¶ 44        The judgment of the circuit court of Kankakee County is vacated, and the cause is

remanded with directions.

¶ 45        Judgment vacated.

¶ 46        Cause remanded with directions.

**No. 3-19-0482**

| | |
|---|---|
| **Cite as:** | *People v. Larson*, 2022 IL App (3d) 190482 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, No. 16-CF-277; the Hon. Ronald J. Gerts, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D. Arado, and Kelly A. Krapf, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |