**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240175-U

Order filed April 4, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0175 Circuit No. 21-CF-248 |
| DEMARCUS T. DENWIDDIE, | ) ) ) | Honorable Sheldon R. Sobol, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Brennan and Justice Bertani concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   (1) The defendant invited any error in the jury instructions. (2) The court did not err when imposing the defendant's sentence.

¶ 2      The defendant, Demarcus T. Denwiddie, appeals his conviction for attempted first degree murder. The defendant argues the Grundy County circuit court committed plain error when it improperly (1) instructed the jury regarding the specific mental state the State was required to prove him guilty beyond a reasonable doubt and (2) sentenced the defendant by failing to consider his youth and mental health and considering a factor inherent in the offense. Alternatively, the

defendant contends that counsel was ineffective for failing to preserve the sentencing issues for review.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged the defendant by indictment with six counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(2) (West 2020)), three counts of aggravated battery (*id.* § 12-3.05(e)(2)), and aggravated discharge of a firearm (*id.* § 24-1.2(a)(3)). The matter proceeded to a jury trial.

¶ 5        The evidence adduced at trial showed that while conducting a routine patrol in a marked squad car, Deputy Tyler Post observed the defendant's vehicle traveling at a high rate of speed and passing approximately five vehicles at one time in an "unsafe and reckless manner." Post pulled behind the vehicle and activated his emergency lights. The defendant stopped on the shoulder. As Post approached the vehicle, the defendant accelerated away from the traffic stop. Post followed the defendant in a high-speed chase using his lights and sirens for approximately 4½ miles. Eventually, the defendant abruptly turned at an intersection, and Post, unable to stop, collided with the defendant's vehicle. At that point, the defendant fled on foot. Post followed and ordered the defendant to stop twice. Soon after, Post tackled the defendant to the ground. Post observed that the defendant had a firearm and he heard several gunshots. The gunshots resulted in two injuries underneath Post's bulletproof vest and a gunshot wound to his forearm. After shooting Post, the defendant continued to flee. The defendant was eventually arrested.

¶ 6        During the jury instruction conference, counsel agreed that each attempted first degree murder related jury instruction should be "given as modified," to exclude the bracketed information. As a result, each attempted first degree murder instruction included the definition that,

2

"[a] person commits the offense of attempt first degree murder of a peace officer when he with the intent to kill an individual, does any act which constitutes a substantial step toward the killing of an individual who was a peace officer who at the time was in the course of performing his official duties and the defendant knew or should have known that individual was a peace officer ***. The killing attempted need not have been accomplished."

The jury found the defendant guilty of all charges, which merged into a single count of attempted first degree murder.

¶ 7    The defendant filed a *pro se* "motion for *Krankel* hearing" alleging claims of ineffective assistance of counsel including, *inter alia*, that the attempted first degree murder "instructions were improper for which [counsel] failed to include the 'without legal justification' phrase" and "counsel was ineffective for not raising an affirmative defense of justification." During the *Krankel* inquiry, counsel addressed the defendant's claim and explained that he had not asked for the language "without lawful justification" because "the comment on that instruction has without lawful justification in brackets and then the comments [say] you can only *** add that to the instruction if there was an affirmative defense. There was no affirmative defense that was raised, and therefore, I didn't think we can have that in there ***." The court denied the defendant's motion.

¶ 8    The defendant filed a *pro se* "motion for new trial." Later, counsel filed an amended motion for a new trial, and the defendant's *pro se* motion was withdrawn. Counsel's amended motion alleged that the language "without lawful justification" should have been included in the attempted first degree murder jury instructions. The court denied the motion. The matter proceeded to sentencing.

¶ 9    The defendant's presentence investigation (PSI) showed that the defendant was 18 years old at the time of the offense. The defendant reported that he suffered from posttraumatic stress disorder and bipolar depression and had consumed ecstasy that day. The defendant began using drugs at the age of 10 and drinking alcohol at 13 years old. The defendant continued using drugs and alcohol, often daily, until his arrest for the instant offense.

¶ 10    At the sentencing hearing, psychologist Anna Stapleton testified that she conducted an evaluation "regarding the *Miller* Factors in association with the new neuroscience and behavioral science that indicates late adolescents have similar brain function and structure to their younger counterparts." Stapleton explained that the defendant's mother had him as a teenager and he was raised by her and another family member, having no relationship with his father. The defendant grew up in "poverty" in "crime ridden" and "highly gang infested" areas, which affected his ability to attend school. The defendant experienced childhood trauma, including physical abuse and alcoholism, and sought mentorship from older gang members. Stapleton believed that the defendant's below average IQ was likely due to his truancy issues and failure to complete high school. The defendant did not have any mental issues that "could impact his ability to think clearly and his ability to function." Stapleton diagnosed the defendant with bipolar disorder, posttraumatic stress disorder, and antisocial personality disorder. On the date of the offense, Stapleton said that the defendant "behav[ed] in a way that was impulsive, reckless, consistent with that of an adolescent." The defendant was "very angry" about the outcome of the trial and engaged in "magical thinking," a characteristic of adolescents. Additionally, the defendant had a history of violating rehabilitative interventions, including probation, electronic monitoring, court supervision, and community service. However, in the several months preceding the sentencing

4

hearing, the defendant's attitude had changed, and Stapleton believed there was "some promise" for his rehabilitation.

¶ 11    Following the evidence in aggravation and mitigation, the court stated, "I read the [PSI] ***. I considered the financial impact of incarceration. *** And certainly considered the nature and circumstances of the offense, the attempt[ed] murder of a police officer. With that, the legislature requires a significant period of incarceration." The court specifically considered Stapleton's report and testimony. Regarding any mitigating justification, the court said, "[n]othing that I could think of would establish grounds to excuse or justify shooting at a police officer under these circumstances. So I find that inapplicable." In commenting on Stapleton's testimony and whether the defendant suffered from a "serious mental illness" at the time of the offense, the court stated, "I don't believe that anyone believes that it's okay to shoot at a cop. But the problems with the defendant's thought process, I think, are very well explained by Dr. Stapleton's analysis." The court acknowledged that the defendant had been abused in his youth and stated, "the circumstances on which the defendant was raised are so disappointing. He had no structure, no supervision, no accountability, and gang members appear to be his only role models." The court noted that "[f]rom the time of 12 on, [the defendant] was almost all the time in contact with the criminal justice system in some form or fashion" until the present offense when "[h]e attempt[ed] to take a life of a police officer." The court concluded that "this type of conduct is not accepted, and a significant sentence is necessary to deter others from believing that they can engage in this type of conduct. A lesser sentence would deprecate the seriousness of the offense of attempting to shoot a police officer." Later, the court said, "[a] significant sentence of incarceration is required to send a message you don't attempt to kill a cop." The court considered Stapleton's testimony regarding "the defendant's age and upbringing on his decision-making process" and stated, "I can assure you that were the

5

defendant older, *** his sentence would be higher than that *** I'm going to impose." The court sentenced the defendant to 55 years' imprisonment. The defendant did not file a motion to reconsider his sentence. The defendant appealed.

¶ 12                                    II. ANALYSIS

¶ 13        On appeal, the defendant argues the court committed plain error when it improperly (1) instructed the jury regarding the specific mental state the State was required to prove him guilty beyond a reasonable doubt and (2) sentenced him by failing to consider his youth and mental health and considering a factor inherent in the offense . Alternatively, the defendant contends that counsel was ineffective for failing to preserve the sentencing issues for review.

¶ 14                              A. Jury Instruction Error

¶ 15        At the outset, we note that the State argues the defendant is barred from raising his improper jury instruction claim under the doctrine of invited error. Specifically, the State contends that defense counsel agreed to omit the language "without lawful justification" from the jury instructions because the defendant did not raise an affirmative defense. In his reply brief, the defendant asserts for the first time that defense counsel was ineffective for failing to properly preserve the sentencing issue.

¶ 16        Under the doctrine of invited error, a defendant may not request to proceed in one manner at trial and then on appeal contend that the requested course of action was in error. *People v. Denson*, 2014 IL 116231, ¶ 17. "The purpose of the invited error doctrine is to prevent a defendant from unfairly receiving a second trial based on an error which he injected into the proceedings." *People v. Smith*, 406 Ill. App. 3d 879, 886-87 (2010). To allow a defendant to procure, invite, or acquiesce in a ruling by the circuit court, even if it is improper, and then contest that same ruling

on appeal would offend the notions of fair play and encourage duplicity by litigants. *People v. Ciborowski*, 2016 IL App (1st) 143352, ¶ 99.

¶ 17    Here, the record shows that defense counsel acquiesced to the omission of the language "without lawful justification" from the jury instructions. Later, counsel explained that the facts of this case did not support the use of this language where the defendant did not raise an affirmative defense. The defendant cannot now claim an error given his choice to proceed in a particular manner. To find otherwise would encourage "objecting to that in which he has acquiesced," "unnecessary reviews and reversals," and "the possibility of unlimited litigation." (Internal quotation marks omitted.) *People v. Harrawood*, 66 Ill. App. 3d 163, 166-67 (1978). We note that plain error review is also forfeited where the defendant invites the error. *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17.

¶ 18    While invited error does not preclude a defendant from raising a claim of counsel's neglect on the same issue (*People v. Villarreal*, 198 Ill. 2d 209, 228 (2001)), the defendant raised his ineffective assistance of counsel claim for the first time in his reply brief.

> "Under the rules of this court and its long-settled practice, questions not raised by appellants in the original brief cannot be raised in the reply brief. A contrary practice would permit appellants to argue questions in their reply briefs as to which counsel for appellees would have no opportunity to reply. Th[ese] question[s] therefore need not be considered." *Holliday v. Shepherd*, 269 Ill. 429, 436 (1915).

See *People v. Lindsey*, 72 Ill. App. 3d 764, 776 (1979). As the defendant raised the issue of ineffective assistance of counsel for the first time in his reply brief, he has forfeited it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 19                                    B. Sentencing Error

¶ 20        The defendant further argues that the court erred in sentencing him where it did not consider his youth and mental health and considered a factor inherent in the offense. The defendant concedes that he forfeited his sentencing contentions but asks that we consider the issue under the plain error doctrine or consider defense counsel's ineffectiveness for failing to raise the issue in a postsentencing motion. Under either theory, we first must consider whether an error occurred as "[a]bsent a clear or obvious error ***, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture." *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179.

¶ 21        The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight that the court should attribute to any factors in aggravation and mitigation depends on the particular circumstances of the case. *Id.* We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will find an abuse of discretion "only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

8

We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10

¶ 22          "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). However, sentencing courts are not obligated to avoid any mention of such factors as if they do not exist. *People v. O'Toole*, 226 Ill. App. 3d 974, 992 (1992). Determination of the appropriate penalty to be imposed must be based on the circumstances specific to each individual case, "including the nature and extent of each element of the offense as committed by the defendant." (Internal quotation marks omitted.) *People v. Hunter*, 101 Ill. App. 3d 692, 694 (1981). "In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Larson*, 2022 IL App (3d) 190482, ¶ 29.

¶ 23          Initially, we note that the parties agreed that the statutory sentencing range for the defendant's Class X felony of attempted first degree murder was 20 to 80 years' imprisonment. 720 ILCS 5/8-4(a), (c)(1)(A), (D), 9-1(a)(2) (West 2020) (when a defendant is convicted of attempted first degree murder of a police officer, the sentencing range is 20 to 80 years' imprisonment and "25 years or up to a term of natural life shall be added to the term of imprisonment imposed" if defendant personally discharged a firearm that resulted in great bodily harm). The defendant's 55-year sentence is well within the statutory range. Therefore, the sentence is presumptively valid, and the defendant bears the burden of rebutting this presumption. *People v. Busse*, 2016 IL App (1st) 142941, ¶¶ 22, 27.

¶ 24          The defendant's argument amounts to an invitation to reweigh the evidence, which we will not do. See *People v. Coleman*, 166 Ill. 2d 247, 261-62 (1995). In the present case, the record

establishes that the court properly weighed the factors in aggravation and mitigation. The court considered the defendant's PSI and heard extensive testimony regarding the defendant's youth and mental health and what effects those facts may have had on the defendant's decision-making capabilities and impulsivity at the time of the offense. The court specifically considered the defendant's age when it stated that, but for his young age, it would have given the defendant a longer sentence, which included the possibility of natural life imprisonment. Moreover, the court discussed the defendant's upbringing and "decision-making process" in mitigation when it imposed a lesser sentence. Ultimately, the court determined that these two mitigating factors did not significantly depreciate the seriousness of the offense or warrant the imposition of a minimum sentence. The seriousness of the offense is the most important factor when sentencing. *People v. Murray*, 2020 IL App (3d) 180759, ¶ 30. "The trial court need not give greater weight to any potential for rehabilitation than to the seriousness of the offense." *Id.* ¶ 33. Though the defendant may believe the mitigating evidence should have been given more weight and warranted a lesser sentence, the court was not required to agree.

¶ 25 Further, we reject the defendant's contention that the court improperly relied on an inherent element of the offense, in that the victim was a police officer. While a court cannot rely on a factor inherent in the offense in aggravation at sentencing, the court is not required to avoid any mention of the nature of the offense. *Phelps*, 211 Ill. 2d at 11; *O'Toole*, 226 Ill. App. 3d at 992. Initially, the court mentioned the victim's status in passing as it explained the nature of the offense and the interest of deterrence of similar crimes. See *People v. Cook*, 2021 IL App (3d) 190243, ¶ 49. Later, the court considered the mitigating factors of the defendant's mental health diagnosis and justification for the offense and acknowledged the victim's status as a police officer. In the context of the court's discussion, the reference of that element of the offense lent to the court's belief that

10

the factor in mitigation was inapplicable, where the defendant's belief would not be justified, and his mental health did not mitigate the sentence to be imposed. Importantly, nothing in the record indicates that the court imposed a more severe sentence based on the victim's status as a police officer or that it would have given the defendant a more favorable sentence if the victim was not a police officer. See *id.* ¶ 48. As a whole, the record demonstrates that the court properly considered the evidence in aggravation and mitigation, in conjunction with the circumstances of the offense and the evidence presented at trial and the sentencing hearing. See *Larson*, 2022 IL App (3d) 190482, ¶ 29. Therefore, we find that the court's passing comments did not establish that it improperly considered an inherent factor. See *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007). Accordingly, the court did not abuse its discretion by imposing the defendant's 55-year sentence. As we found that the court committed no error in sentencing the defendant, we find that the defendant is unable to establish plain error or ineffective assistance of counsel. See *Jones*, 2020 IL App (4th) 190909, ¶ 179.

¶ 26                                          III. CONCLUSION

¶ 27        The judgment of the circuit court of Grundy County is affirmed.

¶ 28        Affirmed.