NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250584-U

NO. 4-25-0584

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 2, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Lee County |
| JASON E. JOHNSON, | ) | No. 19CF110 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Theresa M. Friel-Draper, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding (1) defense counsel strictly complied with
Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), (2) defendant forfeited his
due process claim, and (3) this court would not review a claim of ineffective
assistance of counsel raised for the first time in a supplemental brief.

¶ 2    In September 2024, defendant, Jason E. Johnson, pleaded guilty to one count of

predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)) and one count

of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)). The trial court sentenced defendant to

consecutive terms of 60 and 7 years' imprisonment. On appeal, defendant argues he was denied

due process when (1) the court considered evidence of "numerous uncharged sex-related offenses"

when he had no opportunity to cross-examine the victims and (2) the victim impact statements

contained inadmissible statements dehumanizing him, demonizing him, and requesting a lengthy

sentence. Defendant concedes he did not preserve this due process claim but contends we may

consider it under the second prong of the plain error doctrine. Alternatively, he argues defense counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) because counsel filed his Rule 604(d) certificate simultaneously with the notice of appeal. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                             A. Pretrial Proceedings

¶ 5        On May 17, 2019, a grand jury indicted defendant on four counts of predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)) and five counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)) against A.J., one of defendant's daughters.

¶ 6        In September 2024, defendant entered guilty pleas to one count of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse as charged in the May 2019 indictment. In exchange for defendant's guilty pleas, the State agreed to nol-pross the other seven counts.

¶ 7                                B. Sentencing

¶ 8        The trial court conducted defendant's sentencing hearing on February 6, 2025. Prior to sentencing, the State informed defendant it would be presenting evidence of other uncharged sex crimes. Defense counsel objected to the introduction of this evidence. The court allowed the State to present this evidence, over defense counsel's objection.

¶ 9                          1. *Testimony of Aaron Simonton*

¶ 10        Detective Sergeant Aaron Simonton of the Dixon Police Department testified about his investigation of defendant. The investigation began in October 2018, when Brandi Barkowski, defendant's ex-girlfriend, reported that A.J. told her defendant sexually abused her. A.J. eventually disclosed the abuse that led to the indictment. Following Barkowski's report, the officers learned

about the following other claims of sexually inappropriate behavior against defendant.

¶ 11       An 11-year-old girl in Whiteside County, A.M., told a police officer defendant kissed her on the lips and placed his hand on her clothed buttocks.

¶ 12       K.S., an aunt of defendant's daughter, told the police, when she was eight or nine years old, defendant sexually penetrated her on two occasions. K.S. said she reported these incidents to the police in Walnut, Illinois, when she was a high school freshman, but the department did not find any record of her report.

¶ 13       S.S. informed police she was about six years old when defendant touched her through her bathing suit in the genital area and kissed her neck and knees. Officers found a report related to this incident from Bureau County, which the trial court admitted into evidence over defense counsel's objection.

¶ 14       P.P. (then P.A.) contacted the Dixon police after defendant's arrest. She reported that she had lived across the street from defendant. She would sometimes join her father when he would "tinker" in defendant's garage. When she was 16, defendant performed oral sex on her, and when she was 17, he had sexual intercourse with her. On one occasion, P.P. "passed out" after drinking and woke up to defendant having sex with her. Defendant was charged with aggravated criminal sexual abuse of P.P. in Lee County case No. 20-CF-226.

¶ 15       P.P. also suggested defendant victimized his daughter, S.J. However, when the police attempted to interview her, S.J. declined to speak to them. Although S.J. refused to speak with police, she had filed a verified petition for an order of protection against defendant in 2019. The State introduced a copy of the petition, in which S.J. described two incidents where defendant sexually abused her when she was 5 and 10 years old. The petition was admitted without objection.

¶ 16       When Dixon police officers arrested defendant in May 2019, they seized and

searched his phone. Officers found Internet searches consistent with attempts to locate child pornography.

¶ 17                                         2. *Victim Impact Statements*

¶ 18            Following Simonton's testimony, the State presented victim impact statements from S.J., K.L. (the mother of A.J., S.J., and two other girls of whom defendant was the father), K.S., P.P., and A.J. S.J. called her father a monster. K.L. described the mental health problems A.J. and a sister, E.J., had experienced. K.S. defined defendant as her "nieces' sperm donor." She also explained how her own mental and physical health had suffered due to defendant's abuse. P.P. described blocking her bedroom door with a dresser to keep defendant out. She stated she and the other victims "deserve[d] to know [defendant] will never get out and have a chance to potentially hurt another girl or woman." A.J. labeled defendant as "a demon who ruined [her] life." She stated, "I hope that you will consider giving him the maximum because he might think he's getting a life sentence, but so did I, so did my sister, my cousins, my poor friends and all those other innocent kids [he] preyed on."

¶ 19                                         3. *Imposition of Sentence*

¶ 20            When it imposed sentence, the trial court stated: "The Court has considered the evidence that's been presented, the contents of the Presentence Investigation Report and the evidence that has been introduced today. The Court has considered all the sentencing factors, both factors in aggravation and mitigation." It imposed a sentence of consecutive terms of 60 years' imprisonment for predatory criminal sexual assault of a child and 7 years' imprisonment for aggravated criminal sexual abuse.

¶ 21                                         C. Motion to Reconsider Sentence

¶ 22            Defense counsel filed a motion for reconsideration of the sentence asserting the trial

court failed to give due weight to the applicable mitigating factors. On the original hearing date, the court continued the matter to allow the parties time to obtain and review transcripts. At the next hearing date, defense counsel advised the court he had reviewed the transcripts and consulted by phone with defendant. He stated the original motion did not require amendment. The parties agreed to set a June 6, 2025, hearing date for defense counsel's motion.

¶ 23 On June 6, 2025, the trial court conducted the hearing on defendant's motion to reconsider his sentence. It heard the parties' arguments and denied the motion.

¶ 24 Defense counsel then filed a Rule 604(d) certificate, which was dated "6-10-2025." The parties agreed the certificate was in the proper form. The document following the certificate in the common law record is a notice of appeal signed by defense counsel, which was also file-stamped June 10, 2025.

¶ 25 This appeal followed.

¶ 26 II. ANALYSIS

¶ 27 On appeal, defendant argues he was deprived of his due process rights at his sentencing hearing. He contends the trial court erred when it allowed (1) the State to admit evidence of other crimes he committed when the victims of those crimes were unavailable for cross-examination and (2) the introduction of victim impact statements containing dehumanizing language and requests for a long sentence. Defendant concedes he failed to raise these issues in his postsentencing motion. However, he claims we can review these errors *de novo* despite his failure to raise them in his postsentencing motion; he states he will proceed "under the second prong of the plain error rule."

¶ 28 Alternatively, defendant asserts, "[i]n the event [we] would decline to grant [him] relief on the [due process] issue," we should "remand the case to the trial court for strict compliance

with Rule 604(d)." He contends defense counsel failed to strictly comply with the requirements of Rule 604(d) because counsel filed his Rule 604(d) certificate simultaneously with the notice of appeal.

¶ 29          In response, the State argues (1) defendant's due process claim is meritless and (2) the second prong of the plain error rule is inapplicable because no structural error occurred. With respect to defendant argument about counsel's compliance with Rule 604(d), the State contends, "although both [the certificate and the notice of appeal] indicate they were filed on the same date, there is no indication in this record as to the time of day each was filed, and therefore defendant's assumption they were filed simultaneously is without support."

¶ 30          In his reply brief, defendant insists structural error occurred at the sentencing hearing because the issues he identified rendered it fundamentally unfair. He asserts the cases cited by the State are distinguishable because "the introduction of the highly prejudicial other crimes evidence, and the demonizing victim impact statements, affected [his] entire sentencing hearing."

¶ 31          Defendant then maintains defense counsel failed to strictly comply with Rule 604(d) because "[t]he record does not show that the [Rule 604(d)] certificate was filed prior to the notice of appeal."

¶ 32                              A. Rule 604(d) Compliance

¶ 33          We start by addressing the question of Rule 604(d) compliance because we do not address the merits of an appeal when counsel has failed to strictly comply with the rule. "Counsel's failure to strictly comply with [Rule 604(d)] requires a remand to the circuit court for the filing of a new motion to withdraw guilty plea or to reconsider sentence and a new hearing on the motion." (Internal quotation marks omitted.) *People v. Brown*, 2024 IL 129585, ¶ 48.

¶ 34          Rule 604(d) provides, before a defendant can appeal from a sentence imposed after

a guilty plea where there was no agreement about the sentence, the defendant must file a motion to reconsider the sentence. Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). When defense counsel files the motion, they must also file a certificate asserting they have provided the required assistance to the defendant. It must state:

> "[T]he attorney has consulted with the defendant *** to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." *Id.*

Rule 604(d) further provides counsel "shall file [the certificate] with *the trial court*." (Emphasis added.) *Id.* Our supreme court holds that this requirement means counsel must file the certificate "prior to the filing of any notice of appeal." *In re H.L.*, 2015 IL 118529, ¶ 25. Strict compliance with Rule 604(d) is required, and our review of whether counsel has complied is *de novo*. *People v. Brown*, 2023 IL App (4th) 220573, ¶ 30.

¶ 35 In this case, defendant has not satisfied his burden to demonstrate counsel failed to strictly comply with Rule 604(d). Defendant asserts defense counsel did not file his Rule 604(d) certificate before filing the notice of appeal; he asserts the filings were simultaneous. However, defendant's argument requires us to accept a presumption that the filings were simultaneous when their file-stamps do not allow us to determine which came first. Additionally, defendant does not offer any authority or support for this presumption. As the appellant, it is defendant's burden to affirmatively show the existence of the error he raised on appeal. *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 48; *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945, 958 (1991)). Here,

the record on appeal shows that (1) counsel filed the Rule 604(d) certificate and the notice of appeal on the same day and (2) the Rule 604(d) certificate appears in the common law record on the page before the notice of appeal. The record is therefore, at the very least, *consistent with* the certificate having been filed before the notice of appeal.

¶ 36        The State asks us to presume the document appearing earlier in the record was filed first. Although defendant correctly notes the State has provided no support for this presumption, defendant has provided no reason for us to presume otherwise. When neither the appellant nor the appellee has supported their position, the appellee prevails. *Jefferson*, 2021 IL App (2d) 190179, ¶ 48; see *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-32 (1976) (stating the burden of persuasion remains with the appellant, despite the appellee's failure to file a brief).

¶ 37                          B. Waiver Versus Forfeiture

¶ 38        After briefing on appeal was complete, we granted defendant's motion for supplemental briefing to address our supreme court's decision in *People v. Ratliff*, 2024 IL 129356. Defendant now contends *Ratliff* precludes us from holding he waived his sentencing claims by failing to raise them in his postsentencing motion. Rule 604(d) provides, "Upon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 39        According to defendant, *Ratliff* holds Rule 604(d) waiver applies only to claims arising before a defendant enters their guilty plea, and thus, it does not affect his sentencing claims, which he argues are merely forfeited, not waived. Therefore, defendant requests this court consider his due process claim under the second prong of the plain error doctrine. In response, the State contends *Ratliff* holds any issue not raised in a postsentencing motion after a guilty plea is in fact

waived and not merely forfeited. We need not address the question of whether defendant forfeited his claim, as opposed to waiving it because, assuming, *arguendo*, defendant's claim was forfeited, defendant failed to establish plain error.

¶ 40                                    C. Plain Error

¶ 41          "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, under the plain error doctrine, a reviewing court may address a forfeited claim of sentencing error when a "clear or obvious error" occurred and "(1) the evidence at the sentencing hearing was closely balanced [(first-prong plain error)], or (2) the error was so egregious as to deny the defendant a fair sentencing hearing [(second-prong plain error)]." *Id.* at 545. The plain error doctrine creates "a narrow exception to forfeiture principles designed to protect the defendant's rights and the reputation of the judicial process." *People v. Moon*, 2022 IL 125959, ¶ 21.

¶ 42                                1. *Clear or Obvious Error*

¶ 43          Regardless of whether a defendant alleges first- or second-prong plain error, the first step of the analysis is determining whether a clear and obvious error occurred. *Hillier*, 237 Ill. 2d at 545. And "[w]ithout reversible error, there can be no plain error." *People v. Jackson*, 2020 IL 124112, ¶ 88. The defendant bears the burden of persuasion in establishing plain error. *Hillier*, 237 Ill. 2d at 545. On each issue defendant raises, he has failed to show any clear or obvious error occurred.

¶ 44                    a. Availability of Victims for Cross-Examination

¶ 45          Defendant asserts his rights were violated because the State presented evidence of other sex crimes by him, the victims of which were unavailable for cross-examination. In support

of this claim, defendant relies primarily on *People v. Raney*, 2014 IL App (4th) 130551, and *People v. English*, 353 Ill. App. 3d 337 (2004).

¶ 46    Neither *Raney* nor *English* support defendant's contentions. " '[H]earsay testimony is not *per se* inadmissible at a sentencing hearing as unreliable or as denying a defendant's right to confront accusers.' " *People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 31 (quoting *People v. Foster*, 119 Ill. 2d 69, 98 (1987)). *Raney* recognizes the admissibility of hearsay testimony but holds it must be presented through a witness who is available for cross-examination and not presented in allegations in the presentence report. *Raney*, 2014 IL App (4th) 130551, ¶ 44. *English*, although it does not explicitly mention the admissibility of hearsay when properly presented, states the same proposition as *Raney*: "Evidence of other criminal conduct should be presented by witnesses, who can be confronted and cross-examined, *rather than by hearsay allegations in the presentence report*, so that the defendant has an opportunity to rebut the testimony." (Emphasis added.) *English*, 353 Ill. App. 3d at 339. The State introduced its other-crimes evidence through the testimony of Simonton, a witness who was available for cross-examination. The relevant precedent requires only presentation of other-crimes evidence through live testimony, not that the victims of those crimes personally testify. *Id.* Consequently, defendant failed to demonstrate the admission of other-crimes evidence through Simonton's testimony was error, let alone clear or obvious error.

¶ 47                    b. Inflammatory Victim Impact Statements

¶ 48    Defendant asserts his due process rights were violated by dehumanizing and demonizing language and recommendations for severe sentences in the victim impact statements. However, although defendant complains the statements were beyond the bounds of what the Rights of Crime Victims and Witnesses Act (725 ILCS 120/1 *et seq.* (West 2024)) permits in victim

impact statements, he has failed to show the requisite prejudice to establish a due process violation.

¶ 49     No relief is available for improper comments in a victim impact statement unless the defendant establishes those statements were so prejudicial they resulted in a fundamentally unfair sentencing proceeding. Although the constitutional and statutory provisions authorizing victim impact statements "do[ ] not serve as an invitation to rail against *** defendant[s] or to recommend *** certain sentence[s] to the court" (*People v. Larson*, 2022 IL App (3d) 190482, ¶ 37), defendants are typically barred from raising claims of error on appeal based on the contents of victim impact statements (Ill. Const. 1970, art. I, § 8.1(e); *People v. Richardson*, 196 Ill. 2d 225, 229-32 (2001)). Nevertheless, the due process clause of the fourteenth amendment (U.S. Const., amend. XIV) is a potential basis for relief, but only when the evidence introduced through victim impact statements is "so unduly prejudicial" it renders the proceeding "fundamentally unfair." (Internal quotation marks omitted.) *Richardson*, 196 Ill. 2d at 233. Moreover, a high hurdle exists to establishing such a due process violation: "It is well established that where a sentencing hearing is conducted before the trial court rather than a jury, the court is presumed to consider only competent and relevant evidence in determining sentence." *Id.* This presumption is rebutted only when the record affirmatively shows the court considered improper evidence. See, *e.g.*, *People v. Serritella*, 2022 IL App (1st) 200072, ¶ 99 (stating the presumption that the trial court in a bench trial considered only competent evidence can be rebutted "where the record affirmatively shows the contrary" (Internal quotation marks omitted.)).

¶ 50     In this case, defendant failed to rebut the presumption that the trial court considered only proper evidence at sentencing. Defendant's argument hinges on the following assertion: "In fashioning [defendant's] sentence, the court said that it considered 'the evidence that has been introduced today.' [Citation.] That evidence included the victim impact statements." However,

- 11 -

defendant cannot derive an affirmative showing the court considered the challenged statements from the court's comment. This statement is so general it conveys nothing of substance about the court's reasoning. Defendant thus has failed to demonstrate a clear or obvious error occurred.

¶ 51                                        2. *Structural Error*

¶ 52         Assuming, *arguendo*, defendant had established a clear or obvious error occurred at sentencing, his second-prong plain error argument would still fail because he failed to explain how the errors affected *the framework of* the hearing rather than merely *the process of* the hearing.

¶ 53         Our supreme court equates second-prong plain error with structural error. *People v. Johnson*, 2024 IL 130191, ¶ 55. Structural error is an error of such magnitude that it undermines the framework within which the relevant proceeding was conducted; it is thus distinguishable from "a mere error in the *** process itself." *Id.* ¶ 85.

¶ 54         Defendant has failed to address this distinction anywhere in his brief or reply. Instead, defendant contends the claimed evidentiary errors pervaded the hearing but offers no authority to support his conclusion that the accumulation of enough evidentiary error results in structural error. We thus conclude defendant failed to meet his "burden of persuasion" in establishing plain error (*Hillier*, 237 Ill. 2d at 545).

¶ 55         C. Defendant Cannot Raise an Ineffective-Assistance-of-Counsel

Claim in his Supplemental Brief

¶ 56         In his supplemental brief, defendant asks us to address a claim defense counsel was ineffective for failing to preserve in the postsentencing motion the issues he initially raised as plain error. This request is inconsistent with the supplemental briefing order. Moreover, defendant forfeited the argument by failing to raise it in his initial brief, and we decline to overlook the forfeiture.

¶ 57 Defendant's ineffective-assistance claim is outside the scope of what we permitted in our order for supplemental briefing. Defendant's motion for supplemental briefing stated, "[A]dditional briefing in which the parties could discuss *Ratliff* and its potential applicability to the instant case would assist this Court in reaching a just decision in this appeal." Thus, when we granted the motion, we did so to allow the parties to address *Ratliff*. Defendant's new claim has no direct relationship to the holdings of *Ratliff*. Defendant contends, "[H]is argument that the question of counsel's effectiveness is directly related to the waiver issue [in *Ratliff*] on which this Court ordered supplemental briefing in that, but for counsel's ineffectiveness, the due process issue would be fully preserved for appeal." This is unpersuasive. A claim of ineffective assistance of counsel would be equally pertinent if defendant's due process claim was merely forfeited. Defendant, in his initial brief, might have attempted to avoid the forfeiture by raising it indirectly through an ineffective-assistance claim, but he failed to do so.

¶ 58 Further, under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), points not argued in the appellant's brief—such as defendant's ineffective-assistance claim—are forfeited. Although this court can overlook such a forfeiture, we see no compelling reason to do so. See, *e.g.*, *People v. Conner*, 2025 IL App (4th) 240972, ¶ 18 (stating a reviewing court, in its discretion, may overlook a forfeiture when, for instance, doing so is necessary to obtain a just result). This was an issue defendant could have easily raised in his original brief. Moreover, because in our analysis of defendant's claim of plain error we concluded he did not show the existence of a clear or obvious error, we have fully addressed his underlying claims. Revisiting those claims through the filter of an ineffective assistance claim will do nothing to make them viable. See, *e.g.*, *Jackson*, 2020 IL 124112, ¶ 90 (stating an ineffective-assistance claim fails unless the defendant can show, "absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding

would have been different").

¶ 59                        III. CONCLUSION

¶ 60          For the reasons stated, we affirm defendant's sentence.

¶ 61          Affirmed.